TRAVIS COUNTY DISTRICT CLERK

# REGISTER OF ACTIONS
## CASE NO. D-1-GN-25-002212

| | | | |
|---|---|---|---|
| ROSS PONDER,SARAH PONDER VS. AUSTIN MONTESSORI SCHOOL, INC.,RONALD BAKER,JINNY GONZALEZ | § § § § | Location: Judicial Officer: Filed on: | **345th District Court** **345TH, DISTRICT COURT** **03/28/2025** |

---

### CASE INFORMATION

**Statistical Closures**
04/24/2025    Transfer - CV

Case Type: **Other Civil**

Case Status: **04/24/2025   Transferred**

---

### PARTY INFORMATION

| | | *Attorneys* |
|---|---|---|
| **Plaintiff** | **PONDER, ROSS** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| **Defendant** | **AUSTIN MONTESSORI SCHOOL, INC.** | Schulz, Christopher Houston *Retained* 210-840-0022(W) |
| | **BAKER, RONALD GRAE** | Schulz, Christopher Houston *Retained* 210-840-0022(W) |
| | **GONZALEZ, JINNY** | Schulz, Christopher Houston *Retained* 210-840-0022(W) |
| **As Next Friend Of** | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| **Minor Child** | **P., H.** | |
| | **P., L.** | |
| | **P., R.** | |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|

### EVENTS

| | |
|---|---|
| 03/28/2025 | 📄 ORIGINAL PETITION/APPLICATION (OCA) Party: Plaintiff PONDER, ROSS; Plaintiff PONDER, SARAH Atty/Pro Se: Attorney WELBORN, AMY CATHERINE *PLAINTIFFS ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION* |
| 04/16/2025 | 📄 MOTION Party: Plaintiff PONDER, ROSS; Plaintiff PONDER, SARAH *PLAINTIFFS SUPPLEMENTAL MOTION TO COMPEL MEDIATION* |
| 04/24/2025 | 📄 CVD: TRANSFER/CHANGE VENUE (OCA) |
| 04/24/2025 | 📄 FINAL OR PARTIAL DISPOSITION ORDER Party: Defendant AUSTIN MONTESSORI SCHOOL, INC.; Defendant BAKER, RONALD |

TRAVIS COUNTY DISTRICT CLERK

# REGISTER OF ACTIONS

### CASE NO. D-1-GN-25-002212

|  |  |
|---|---|
| | GRAE; Defendant GONZALEZ, JINNY |
| | *NOTICE OF REMOVAL* |
| 04/24/2025 | **Statistical Closure** |
| | Transfer - CV |
| | **SERVICE** |
| 04/01/2025 | **Citation** |
| | 📄 AUSTIN MONTESSORI SCHOOL, INC. |
| | Issued |
| 04/01/2025 | **Citation** |
| | 📄 BAKER, RONALD GRAE |
| | Issued |
| 04/01/2025 | **Citation** |
| | 📄 GONZALEZ, JINNY |
| | Issued |

| DATE | FINANCIAL INFORMATION | |
|---|---|---|

| | | | |
|---|---|---|---|
| | **Plaintiff** PONDER, ROSS | | |
| | Total Charges | | 374.00 |
| | Total Payments and Credits | | 374.00 |
| | **Balance Due as of 04/30/2025** | | **0.00** |
| 03/31/2025 | Charge | Plaintiff PONDER, ROSS | 374.00 |
| 03/31/2025 | E-File Electronic   Receipt # 2025-016528 Payment | Plaintiff PONDER, ROSS | (237.00) |
| 03/31/2025 | Credit | Plaintiff PONDER, ROSS | (137.00) |



**I, VELVA L. PRICE, District Clerk,** Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on 04/30/25

VELVA L. PRICE

DISTRICT CLERK

By Deputy:

*Printed on 04/30/2025 at 10:14 AM*

C I T A T I O N

THE STATE OF TEXAS

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

vs.

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:   **RONALD GRAE BAKER**
      **5006 SUNSET TRAIL**
      **AUSTIN TX  78745**
      **OR**
      **10521 REDMOND ROAD**
      **AUSTIN TX**
      **OR WHEREVER FOUND**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX  78759**

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street| P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at

_____ within the County of _____ on the _____ day

of _____, _____, at _____ o'clock ____M., by delivering to the within named

_____, each in person, a true copy of this citation together with

the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached

such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

                                              _____
                                              Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the

_____ day of _____, _____.      By:_____

                                              _____
                                              Printed Name of Server

                                              _____ County, Texas
_____
Notary Public, THE STATE OF TEXAS
**D-1-GN-25-002212**                           **SERVICE FEE NOT PAID**



### C I T A T I O N

### THE STATE OF TEXAS

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

vs.

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:    **AUSTIN MONTESSORI SCHOOL, INC.**
       **BY SERVING ITS REGISTERED AGENT SANDRA BARTHOLOME**
       **5006 SUNSET TRAIL**
       **AUSTIN TX  78745**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX  78759**



Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

### R E T U R N

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at

_____ within the County of _____ on the _____ day

of _____, _____, at _____ o'clock ____M., by delivering to the within named

_____, each in person, a true copy of this citation together with

the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached

such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

_____
Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the

_____ day of _____, _____.        By: _____

_____
Printed Name of Server

_____        _____ County, Texas
Notary Public, THE STATE OF TEXAS
**D-1-GN-25-002212**                              **SERVICE FEE NOT PAID**



CITATION
THE STATE OF TEXAS
**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

vs.

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:    **JINNY GONZALEZ**
      **5006 SUNSET TRAIL**
      **AUSTIN TX 78745**
      **OR**
      **2907 POPS WAY**
      **AUSTIN TX 78745**
      **OR WHEREVER FOUND**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX 78759**

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

**RETURN**

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at

_____ within the County of _____ on the _____ day of

_____, _____, at _____ o'clock ____M., by delivering to the within named

_____, each in person, a true copy of this citation together with the **PLAINTIFFS ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

_____
Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the

_____ day of _____, _____.    By:_____

_____
Printed Name of Server

_____
Notary Public, THE STATE OF TEXAS    _____ County, Texas
**D-1-GN-25-002212**    **SERVICE FEE NOT PAID**



3/28/2025 4:24 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Ruben Tamez

D-1-GN-25-002212

CAUSE NO. _____

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | 345TH, DISTRICT COURT |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

### PLAINTIFFS' ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend

of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and file their Original Petition and

Motion to Compel Mediation (the "Petition") against Defendants Austin Montessori School, Inc.

("AMS"), Ronald Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually

("Gonzalez") (collectively "Defendants") and would show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas

Rules of Civil Procedure.

### II.    PARTIES

2.    Plaintiffs Ross and Sarah Ponder are the parents of H.P., L.P., and R.P., minors. Plaintiffs

reside in Travis, County, Texas.

3.    Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place

of business at 5006 Sunset Trail, Austin, Texas 78745. Austin Montessori School, Inc. can be

served through its registered agent, Sandra Bartholome at 5006 Sunset Trail, Austin, Texas 78745.

4.    Defendant Ronald Grae Baker is an individual that resides in and can be served at his

principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at his residence at 10521

Redmond Road, Austin, Texas 78739.

5.      Defendant Jinny Gonzalez is an individual that resides in Travis County and can be served

at her principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at her residence at

2907 Pops Way, Austin, Texas 78745.

### III.    JURISDICTION AND VENUE

6.      Subject matter jurisdiction is proper because the amount in controversy exceeds the

minimum jurisdictional limits of this Court.

7.      Venue us proper in Travis County, Texas, under Texas Civil Practice and Remedies Code

Sec. 15.002(a) as all or substantially all of the events that give rise to this claim occurred in Travis

County.

### IV.    SUMMARY

8.      The Ponders fully embraced Montessori practices and were excited to have enrolled their

children, H.P., L.P., and R.P., at AMS.  Unfortunately, it became evident over time that AMS had

adopted their own practices and interpreted Maria Montessori teachings in a way that was

meaningfully different from other Montessori schools.  AMS's administrative staff had their own

beliefs and practices that were not explained prior to enrolling the Ponder children.  These practices

were very harmful to the Ponder children, especially H.P.

9.      The Ponders had a history of ADHD in their family and as such wanted to put their children

in a Montessori School because studies have shown that an adapted educational environment, such

as a Montessori school is beneficial for ADHD children.  Only after contracting with AMS, were

the Ponders made aware that Defendants had major issues with an ADHD diagnosis in children

and treatment of ADHD with medication.



10.    Unfortunately, AMS did not ascribe to the inclusive Montessori teachings.  AMS failed to admit that they discriminate against those with ADHD, did not believe children should be diagnosed with ADHD, and did not believe in the use of medication to treat the diagnosis.  AMS further did not disclose that if a child had ADHD behaviors, AMS would apply their own form of quack medicine in treating the child.  Nor did AMS admit that a diagnosis of ADHD and/or treatment of an ADHD diagnosis with medication would result in expulsion.  Instead, they fraudulently induced the Ponders into contracts and then discriminated against H.P. and failed to provide him accommodations for his disability.

11.    Further, AMS allowed and supported Jinny Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license.  The AMS administration fully supported Jinny Gonzalez and allowed her to make diagnoses of children, knowing she had no medical training.  Ms. Gonzalez "diagnosed" H.P. with "an underdeveloped will" in September 2023 and offered to treat H.P.'s disorder.  Based on her diagnosis, Ms. Gonzalez made specific demands of the Ponders as part of her quack medicine treatment.  Her treatment plan was psychologically abusive, harmful, and disruptive.

12.    To prevent exposure of AMS's quack medical and/or manipulative controlling practices and other harmful practices, AMS refused to provide important information to the parents of the children attending AMS.  The parents of AMS students were not given meaningful opportunities to communicate with the staff working with their children.  H.P. was often isolated from his peers and taken out of the classroom with a staff person.  The Ponders were provided very minimal information about individuals who were alone with and in charge of H.P.'s supervision.  The Ponders had a right to know if this individual was qualified to be working with their child.  The Ponders had a right to know what this individual was doing with their child when he was isolated



3

and H.P.'s reaction to this treatment method the school had imposed upon H.P.   This communication was critical to H.P.'s medical treatment.   AMS had created a medical treatment plan and then failed to allow the Ponders to access medical records, school records, and treatment records in violation of state and federal law.

13.     The Ponders were repeatedly called to AMS on short notice to pick up H.P. and/or R.P. without being given any information regarding the alleged incident that had occurred.   It was impossible to discern if there were actual issues with H.P. or R.P. or the nature of the alleged concerns because AMS hid the information to the detriment of the entire Ponder family.

14.     Upon questioning AMS's quack medicine, controlling, and manipulative practices, and bringing the concerns to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling all of the Ponder children without notice, including the oldest child, who was in AMS's elementary classroom.

## V.    FACTS

15.     The Ponders first enrolled at AMS in August of 2023.   The Ponder children had been enrolled in another Montessori school and the children thrived in the Montessori environment. The Ponders live very close to AMS and hoped to enjoy the opportunity to walk to school and feel a close connection to the AMS community.   The Ponders were further drawn to the promise of collaboration and communication in the education of their three children and had hoped to keep all three children enrolled through their middle school education.   The Ponders had believed AMS would provide a nurturing supportive environment for their children of all abilities and learning styles in keeping with Maria Montessori's teachings.

16.     The Ponders were told by the AMS administration multiple times from 2022 to 2023 that it was extremely rare to be admitted when children were over 4.5 years old.   When the May 2023

4



fall admission opened, they were told to take it, as it was very unlikely that a spot would be available the following year.

17.     The Ponders enrollment contracts were for an 8 am-3:15 school day (full-time) for all three children. The AMS administration did state that lunchtime pickup was an option if a child was not a napper, making it seem that a failure to nap would not prevent the student's success at AMS. (However, students were not required to nap after age 4.5.) While the Ponders were required to remain under contract when two of the three children's school day hours were reduced, the reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant. This caused great financial burden to the Ponders.

18.     H.P.'s first day at AMS was August 17, 2023. AMS provided an update and noted that there were no issues when H.P. napped. It was also noted that H.P. did not like his lunch, which the Ponders had prepared according to AMS's strict school lunch requirements.

19.     On August 20, 2023, H.P. turned four years old.

20.     On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time. A meeting was immediately held the same day to address the matter.

21.     Regardless, on Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day because he was not napping. The Ponders were told this was a transition period for AMS to allow H.P. to get used to the new classroom. The Ponders were not given any alternatives and were told that they had to pick him up at noon. The Ponders specifically chose to enroll their three children at AMS because it allowed for full day coverage for all their children, allowing them to work demanding full-time jobs.

22.     Throughout the next weeks, the Ponders made numerous attempts to update the school



regarding H.P.  AMS, in turn, did not provide quality feedback but pushed H.P.'s release time to 10 am, a mere two hours after his arrival time without explanation.  AMS did not offer to compensate the Ponders nor did AMS discuss letting the Ponders out of their contract.  The Ponders were left financially strapped into a contract for full-time care but were receiving less than two hours a day to complete their work before they were forced to bring their young son back home.

23.    On Friday, September 8, 2023, Jinny Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation."  The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred.  Over the weekend the meeting was scheduled for September 11, 2023.  The meeting would include the Ponders, Jinny Gonzalez and Sveta Paris. None of the classroom staff was invited to attend.  Ms. Gonzalez informed the Ponders that H.P. would not be allowed to attend AMS until September 12, 2023, meaning the Ponders had to arrange childcare for H.P so that they could attend the meeting.

24.    At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative."  AMS notified the Ponders that instead of trying to work with H.P. on his behaviors they were "going to control the systems."  It was at this meeting and in her follow-up correspondence that Ms. Gonzalez diagnosed H.P. and laid out her treatment plan for H.P.

25.    Ms. Gonzalez's medical treatment plan required that the Ponders follow a consistent routine in the mornings and even recommended that they "modify the time each family member goes to bed and wakes up."  Oddly, this consistent routine was not applied at AMS and they would disrupt the schedule of the child or parent regularly.

26.    Ms. Gonzalez instituted rules for speaking to H.P., requiring that the Ponders only provide brief and factual information to their son and that they acknowledge his feelings only with humor



and lightness.

27.     Ms. Gonzalez forbade the Ponders from walking to school and required that H.P. arrive by car at exactly 8 am daily. She further demanded that H.P. be seated in the car closest to the entrance and that the Ponders were not allowed to exit the vehicle or help H.P. exit the vehicle.

28.     Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until 10 am, meaning he would attend school for only two hours a day, until another meeting could be held in two weeks. During this two-week period Ms. Gonzlez and AMS were treating H.P.'s condition, she would determine if H.P. made progress in his treatment that would allow H.P. to attend for a longer day.

29.     AMS and Ms. Gonzalez also required that the school counselor observe H.P. Ms. Gonzalez stated that the treatment plan would "break the habit" of H.P. being in distress.

30.     AMS informed the Ponders that the latest H.P. would be allowed at AMS was noon, even after they had "controlled the systems" with their medical treatment plan. Ms. Gonzalez also demanded that the Ponders keep their phones on at all times to accommodate immediate pickups when AMS required it.

31.     On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders. This was scheduled for September 27, 2023.

32.     On September 15, 2023, the Ponders requested an update on H.P. and asked if he could gradually leave a little later. Ms. Gonzalez informed the Ponders that this would not be an option and that H.P. would continue attending school until 10 am. Another meeting was scheduled on Thursday, September 21, 2023 to discuss the progress of H.P.'s treatment of his condition.

33.     On September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to



cancel the meeting due to being very busy. They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

34.     At the September 26, 2023, meeting, additional requirements were added for the Ponders by Ms. Gonzalez for the treatment of H.P.'s condition. This included feeding H.P. **on a tray in the bathroom** each morning instead of with his siblings.

35.     On September 29, 2023, the Ponders were able to have a call with H.P.'s Guide to discuss his improving progress. On October 2, 2023, H.P.'s teacher informed the Ponders that H.P. had been improving and had "the best day at school so far." There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

36.     On December 8, 2023, AMS stated that they were honored to work with the Ponders and that with regard to H.P., they "deeply desired to meet his needs." They were very positive and noted the Ponders followed the treatment plan that AMS had instituted through. Ms. Gonzalez. However, they still refused to allow H.P. to attend school full-time.

37.     AMS suggested hiring an occupational therapist to work with H.P. At the recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an occupational therapist but yet another unqualified medical provider that Ms. Gonzalez and AMS recommended as part of their quack medicine. This caused a delay in getting H.P. an OT evaluation.

38.     On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. She noted that she and Ms. Gonzalez were best suited



for determining when H.P. could extend his day.

39.    Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m. Again, the contractual terms and payments were for full day coverage, not a two-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

40.    On January 23, 2024, AMS informed the Ponders that they were yet again "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time. The Ponders provided more recent evidence from the school of H.P.'s positive improvements.

41.    On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. When notified of the family emergency, AMS refused to accommodate H.P. staying for a full day as contracted. They even denied a request to allow him to stay when Ross had to leave town and was unable to pick up H.P. at 11:45 am. Ross Ponder was trying to leave town to see his brother before life support was pulled. The school administration offered no meaningful condolences and did not offer reasonable courtesies for the parents.

42.    On February 20, 2024, H.P. turned 4.5 years of age. This is significant because it is AMS policy that children 4.5 years of age or older do not have to nap in Casita and are invited to stay until 3:15 p.m. daily without a nap. H.P., like all other children, should have been allowed at AMS until 3:15 p.m. daily even if he was not taking a nap. Unfortunately, AMS chose to discriminate against H.P. and refused to treat him as the other students and continued to demand that he nap.

43.    H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024. On May 16, 2024, Jinny Gonzalez informed the Ponders that they again



had staffing issues that prevented H.P.'s teacher, the one who interacted with him daily, to attend the meeting on May 17, 2024.

44.    At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended-day, as they had contracted for full-time school. The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

45.    On July 2, 2024, immediately upon her return from vacation, H.P.'s teacher communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.

46.    By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes. While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early. Additionally, AMS began requiring that R.P. also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

47.    On September 11, 2024, the Ponders notified the school that the family's beloved dog was going to have to be put down.

48.    On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns. On September 12, 2024, the AMS called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early. The Ponders were informed that AMS was "unsuccessful" and that they were not fulfilling R.P.'s need for sleep and rest. When AMS demanded the Ponders pick up their children with unreasonable notice, the Ponders made clear that they were not available because their beloved family dog, Bear, was actively dying of cancer

10



that afternoon in their home.  Bear died around 3 pm and the Ponders were forced to coordinate emergency vet transportation while simultaneously coordinating the school pickups AMS demanded.

49.      AMS then determined that R.P. did not fit their program because she was a bad napper. The Ponders had multiple communications with AMS during the first few weeks of school and were informed she was doing well, and no napping concerns were raised.  The demand that she be picked up early was shocking to the Ponders.  R.P. had no problems with napping at her prior school and no concerns had been raised at AMS. (Interestingly, R.P. has no napping issues at her current Montessori school.)

50.      On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS.  The Ponders asked for a review of the parent partnership agreement, as clearly AMS was in breach.

51.       On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her treatment plan for December 5, 2024.  The Ponders asked to discuss if any interim changes needed to be made and informed AMS that H.P. would be going to the doctor to determine if he had ADHD.  AMS refused to fill out the requested Vanderbilt questionnaire.

52.      On December 3, 2024, H.P. was formally diagnosed with ADHD.  The Ponders provided the diagnosis and medical documentation to AMS immediately.

53.      On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think AMS was the right school for H.P. Ms. Gonzales stated that she did not believe in medicating a child with ADHD and did not approve of the treatment plan of H.P.'s physician.  In fact, with the support of AMS, Gonzalez specifically discussed her medial plan, delaying medicating H.P.  Oddly, in the meeting report, Ms. Gonzalez



specifically noted that some children require accommodations and that it is the Montessori philosophy to use every resource available to aid in a child's development and stated that they "deeply desired to meet his needs." H.P.'s Guide only attended the first 15 minutes, but could not stay for the whole meeting due to staffing issues.

54.     On December 6, 2024, Jinny Gonzalez, stated that H.P. could no longer benefit from a Montessori education. AMS shortened H.P.'s days to half days.

55.     On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects on the child. The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication.

56.     On December 16, 2024, the Ponders met with Ronald Grae Baker and School Advisor, Jeff Schneider. Mr. Baker told the Ponders that AMS can accommodate an ADHD diagnosis and medicinal treatment. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates on H.P.'s response to medicine.

57.     Over the holidays, the doctor was able to work to find the proper medication dose to best assist H.P. This led to significant improvement in his ADHD behaviors.

58.     From December 16, 2024, to January 27, 2025, AMS refused to provide requested feedback to the Ponders on H.P.'s response to ADHD medication. Ronald Grae Baker falsely promised to withhold an enrollment decision for the following year until the middle of the spring semester to allow AMS to observe and update the Ponders on H.P.'s response to medication.

59.     The Ponders made repeated requests for an accommodation meeting and requested that Ms. Gonzalez be taken off the team, due to her alternative treatment methods not being accepted over those of H.P.'s physician.

60.     On January 17, 2025, Ronald Grae Baker sent correspondence stating that AMS would not



be offering an enrollment contract for the following year to H.P. Mr. Baker also chastised the Ponders for requesting that Ms. Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine.

61.    On January 20, 2025, the Ponders again requested a meeting to discuss the observations of H.P. in the weeks after he had started ADHD medication. Once the Ponders shared H.P.'s diagnosis, the team no longer worked to help H.P. but alienated him and discriminated against him due to his disability.

62.    On January 24, 2025, the Ponders met with Ronald Grae Baker and Jeff Schneider, School Advisor. In preparation for this meeting, they requested to discuss communication issues and noted that these issues were pervasive throughout the school, noting other parents had similar concerns. The Ponders were concerned with the lack of communication and the systematic barriers that prevented parents from being informed of concerns regarding their children. AMS was reminded of the need to provide reasonable accommodations to H.P. The Ponders noted that no incidents had been report at AMS since winter break, and that H.P. was responding well to medication, including at church, YMCA, and other common places. Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

63.    On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services. The fact that this complaint was filed was made known to AMS on January 25, 2025. The Ponders chose to file this reported based on their experiences and after reviewing AMS's most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS.



64.     On January 28, 2025, Ronald Grae Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including their quack medicine.  The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make change and to help all students, an effort to gain community support and raise concerns, as the discrimination and retaliation were factors all parents should be informed of when renewing enrollment.  The WhatsApp group was a private, optional, parent run platform that was not associated with the school administration.  A coffee was also held at the Ponders home to further discuss systematic communication issues affecting many students at AMS.

65.     On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. had ADHD but that he would be placed in a standard classroom and did not need special education or occupational therapy. The results were immediately distributed to AMS and the Ponders requested a meeting with Gina Applegate, the school support specialist, Jinny Gonzalez, and H.P.'s guide.  The Ponders included Jinny Gonzalez in this communication because Ronald Grae Baker had stated it was a requirement for the continued enrollment of L.P. and R.P. in his email dated January 28, 2025.

66.     On January 30, 2025, Ronald Grae Baker sent a letter to all parents stating that the information provided by the Ponders was "misleading" and that "false claims" were made.

67.     On January 31, 2025, AMS terminated the enrollment of all three Ponder children.  H.P. was denied full and equal educational access, denied disability accommodations, as the enrollment was terminated when the school received notice that H.P. had a disability, ADHD.  Additionally, AMS terminated L.P. and R.P. because the Ponder parents' "actions were detrimental to the school."  Clearly the actions referred to are the filing of the HHS complaint, advocating for



disability accommodations, and reaching out to other parents to discuss the concerns and determine if others were in a similar situation. The termination of the remaining Ponder children was retaliation.

68.    The impact on the family has been extreme: While attending the school, the failure to institute a 504 plan for H.P. caused developmental delays and extreme anxiety for H.P. H.P. was forced to attend expensive outside services at the demand of AMS.

69.    H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS. The level of torture he experienced was not understood until he was placed in a new school, where he is not only thriving, but has had zero behavior problems and is a model student. Clearly, the root of his behavior problems stemmed from AMS's intentional and negligent failure to address his needs. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

70.    The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family. The Ponders entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to walk their children to school and were told when and how to wake their children each morning. Maria Montessori stated, "We must respect the child, and he must understand that he is respected." AMS neither respected nor made the Ponders feel respected. Further, the Ponders were forced to spend thousands of dollars on demanded outside OT that did not address H.P.'s ADHD.

71.    Due to the change in hours, Ross Ponder was forced to quit his job, to allow him to be available to pick up the children on a moment's notice. This has been detrimental to his income in both the long and short term.



72.    The impact on Sarah Ponder's career is significant. Some of her clients were in the AMS community. Sending a letter to the entire community defaming the Ponders will have serious long-term impacts on her company's growth. Ms. Ponder is aware of at least one client that she lost due to this entire situation.

73.    The impact on the children has been significant. They were forced from their school and the friends they had expected to go to school with until they graduated middle school. They were not able to be immediately placed in school, and the oldest child is in elementary school, thus causing a severe impact to her education.

74.    The expulsion caused extreme mental anguish for the entire family. Maria Montessori stated, "The things the child sees are not just remembered; they form part of his soul." This will forever impact the Ponder family.

## VI.    CAUSES OF ACTION

### A.    Count 1- Negligence

75.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

76.    The occurrences made the basis of this suit and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligent conduct of Defendants. Defendants were negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

      a. Failing to exercise the care necessary under the circumstances;

      b. Failing to do what a reasonable daycare would have done under the circumstances;

      c. Failing to intervene to ensure a child's safety;

      d. Failing to provide proper supervision;



e. Failing to properly hire, qualify, train and supervise its employees;

f. Failing to provide reasonable accommodations; and

g. Failing to adhere to the Texas Minimum standards for childcare.

77.     Defendants had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

78.     Defendants had a duty to maintain a safe environment for children in its care;

79.     Defendants had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

80.     Defendants breached the duty of care by failing to care for the children, failing to supervise the children, failing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

81.     Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B.     Count 2- Negligence *Per Se***

82.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

83.     Defendants failed to exercise the mandatory standard of care in violation of the minimum standards for childcare.

84.     Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Repeatedly, AMS failed to use praise and encouragement, instead used humiliation and rejection with H.P.

85.     Texas law has specific maximums on the number of children that can be in a room. 26 TAC



Sec. 746.1601-1615. These numbers were exceeded or the Ponder children were sent home to accommodate new students after the holidays.

86.    Accommodations recommended by qualified professionals and medical experts were not provided to H.P. in violation of 26 TAC 746.2202.

87.    AMS failed to encourage H.P. to express feelings and failed to give him appropriate attention. 20 TAC 746.2601

88.    AMS failed to comply with the regulations regarding naptimes and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321.

89.    AMS failed to notify the Ponders that AMS refused to administer or allow students to take ADHD medications in violations of 26 TAC Sec. 746.3811.

90.    AMS failed to follow the laws regarding release of children.  26 TAC Sec. 746.4103

91.    Additionally, according to AMS staff, AMS had 39 children in the Casita at one time, the location used for young children to nap.  Clearly the state of Texas created these regulations to protect children.  The violation of these statues harmed the Ponder family.

92.    Defendant Gonzalez violated the law by practicing medicine without a license.  Defendants AMS and Baker supported and assisted Gonzalez in her medical endeavors.

93.    Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

94.    Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.

95.    As a result of the Defendants' illegal acts and/or omissions in violating the statutes, Plaintiffs sustained injuries.

**C.    Count 3- Gross Negligence**

96.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully



herein.

97.    Defendants' conduct was more than momentarily thoughtlessness or inadvertence. Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

98.    Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs. Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiffs and/or other similarly situated individuals. Plaintiffs acted with malice. Plaintiffs suffered damages and further seek punitive damages.

**D.    Count 4- Negligent Activity**

99.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

100.   Defendant AMS is the owner, operator and possessor of the daycare premises.

101.   Plaintiffs H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owned a duty to exercise reasonable care.

102.   Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

103.   Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

**E.    Count 5- *Respondeat Superior***

104.   Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.



105.    The negligence, carelessness, and callousness of Defendant AMS's employees proximately caused the damage and loss suffered by Plaintiffs.  At all times material to this action, Defendant AMS's employees were acting in the course and scope of their employment.  Accordingly, Defendant's may be held responsible for its employees' negligence under the doctrine of *respondeat superior.*

**F.    Count 6- Violations of the Americans with Disabilities Act (ADA)- Title III**

106.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

107.    Defendants discriminated on the basis of H.P.'s disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III of the ADA, 42 U.S.C Sec. 12182(a) and the title III implementing regulation at 28 C.F. R. Part 36.

108.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by failing to reasonably accommodate his disability while he attended school there in violation of 42 USCA Sec 12181(7)(J).

109.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by dismissing him from school for behaviors that were a manifestation of his disability in violation of 28 CFR Part 36.

110.    Defendant AMS discriminated against H.P. by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 USC Section 12182(b)(2) (A) (ii) and its implementing regulation 28 C.F.R. Sec. 36.302.



111.    Defendant AMS's action in disenrolling H.P. on the basis of disability, constitutes a denial of the opportunity for H.P. to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity in violation of 42 U.S.C. Sec. 12182(b)(1)(A)(i) and 28 C.F.R. Sec. 36.202.

112.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**G.    Count 7- Violations of Section 504**

113.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

114.    Defendants excluded Plaintiff H.P. from participation in activities and programs, and was denied the benefits of the services, programs, and activities and was subjected to discrimination because of his disability, ADHD.

115.    The actions of Defendant Gonzalez created an interference of professional bad faith or gross misjudgment.

116.    The actions of Defendants were done out of prejudice, malice, ill will, and/or spite against Plaintiffs.

117.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**H.    Count 8-Breach of Contract**

118.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

119.    Plaintiffs entered into a valid contract for the provision of childcare services for their three minor children.  There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

120.    Plaintiffs tendered performance according to the terms of the contact.



121.    Defendant AMS breached its duties and obligations under the contract, both explicit and implicit, pertaining to providing appropriate child care, custody, and supervision by all acts stated above.

122.    Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential.

123.    Further, Plaintiffs seek to recover their attorney fees under the Texas Civil Practices and Remedies Code.

**I.      Count 9- Fraud**

124.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

125.    Plaintiffs discovered that Defendants had been defrauding them by making promises and commitments to get Plaintiffs' payments and re-enroll their children when Defendants, particularly Defendant Baker, knew the statements were false and that he had no intention of fulfilling.

126.    Defendants made material misrepresentations that were false.  Defendants knew these statements were false or they were made recklessly without any knowledge of the truth and as a positive assertion.

127.    Defendants made the statements with the intention that Plaintiffs would act upon it and Plaintiffs acted in reliance of the representations and causing injury, damages, and harm.

128.    Plaintiffs seek treble damages and attorney fees.

**J.      Count 10- Fraudulent Inducement to Contract and Breach of Contract**

129.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

130.    The Ponders enrolled all their children at AMS because AMS stated that they followed the



Montessori teaching paradigm and that they would offer full-day schooling for the three children, meaning the children would attend AMS from 8 am to 3 pm Monday-Friday. The Ponders relied on these assertions when entering into contracts with AMS.

131.    The mission of the school stated that they are inclusive and "cultivate compassion and respect." Unfortunately, the administration of AMS lacked compassion and respect for the entire Ponder family.

132.    The teachings of Montessori include "protecting the autonomy and integrity" of a student and developing a program that follows "the developmental states manifested by the children" and "honor and respect each child's individual timetable for development"- (Bryant Goertz, Donna. *"Children Who Are Not Yet Peaceful: Preventing Exclusion in the Early Elementary Classroom,"* [Frog, Ltd. Berkeley, CA, 2001.]) The Montessori teachings do not include discrimination and refusal to comply with 504 and provide accommodations.

133.    The Ponders were further induced to reenroll for a second year. The AMS handbook clearly stated that the Guides would be trained by AMI and would engage in the "most authentic standard of Montessori pedagogy" and that the Guides would have an understanding of developmental milestones and ensure a structured learning approach that aligns with the AMI guidance.

134.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging. These principals were not utilized with H.P.

135.    The AMS parent handbook outlines procedures for programmatic changes that were not followed. The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations regarding the Ponder children, or hold



requested conferences.

136.    AMS further stated that it would not discriminate and comply with ADA and Section 504 of the Rehabilitation Act of 1973, as amended.  Ronald Grae Baker was the alleged coordinator, yet the school insisted that Jinny Gonzalez be the point person and Ronald Grae Baker failed to address or even discuss violations.

137.    AMS fraudulently induced the Ponder family to contract for all three children's education. AMS breached its contracts with the Ponders by failing to provide 504 services for H.P., failing to allow the children to receive full day education, and failing to follow the school policies.

138.    As a result of Defendants fraudulent inducement, Plaintiffs suffered harm, injury and damages.  Further, Plaintiffs seek attorney fees and treble damages.

**K.    Count 11- Civil Conspiracy**

139.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

140.    Defendants acted in combination to seek or accomplish a course of action to commit unlawful acts. There was a meeting of the minds of the Defendants to agree to accomplish the above stated unlawful acts.  Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement.  As a result, Plaintiffs suffered harm, injury and damages.

**L.    Count 12- Retaliation**

141.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

142.    Plaintiffs and Defendants did not agree on the use of medication to treat a child who suffers from ADHD.  While the school did not have a no medication policy, Defendant Gonzalez clearly



felt that it was unacceptable to treat H.P. in the manner his physician recommended. Ms. Gonzalez was not a doctor and had no training or experience to justify her position or the action plans she required. Ms. Gonzalez had very specific requirements for treatment of H.P., both at home and at school, including requiring the Ponders to drive to school, wake up children in a certain order, and other questionable commands. AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine. The Ponders voiced concern over these methods and were shut down by Ms. Gonzalez. Further, she failed to provide insight on what was occurring in the classroom or how any of her requirements would provide any effective change.

143.    When the Ponders asked to discuss with another staff member and remove Defendant Gonzalez from H.P.'s case, Defendant Baker refused to accommodate, chastised the Ponders for their request, fully supported Ms. Gonzalez, and expelled H.P. in retaliation for Plaintiff's medicating H.P. The school's support of Ms. Gonzalez's quack medicine is very concerning, as she is not a physician nor trained in any way on the treatment of children with ADHD.

144.    Defendant AMS has explicitly stated that it follows 504 regulations. However, AMS vehemently supported Ms. Gonzalez's refusal to follow 504 procedures. When the Ponders questioned her, AMS retaliated by expelling H.P. and days later, all of the Ponder children.

145.    Defendants retaliated for the filing of a complaint with the HHS by threatening and later expelling the Ponder children.

146.    The Ponders care not only about their own children but about the entire AMS community. When they learned that H.P. had been expelled, they decided to bring their concerns to the attention of other parents, in hopes of making AMS better for all students attending. The policies and procedures were not followed with H.P. As such, the Ponders reached out to the community so that the community, as a whole, could work together to find ways to foster better communication.



The Ponders posted a letter to all parents on the WhatsApp on January 28, 2025. The letter did not violate any rules of AMS. AMS had the letter taken down on January 30, 2025. Yet, as a further act of retaliation, AMS chose to send an email making defamatory statements against the Ponders to all families at AMS.

## VI.    DAMAGES

147.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

148.    Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

1. Loss of value of the tuition/fees that Plaintiffs paid for the childcare;

2. Loss of wages for Mr. and/or Ms./ Ponder incurred by having to stay home and care for H.P. and R.P when they were sent home early and while they began the long, slow, and careful process of finding another school/childcare to entrust their children, after undergoing such a traumatic ordeal;

3. Medical expenses for the reasonable and necessary examination of H.P.;

4. Medical expenses for the reasonable and necessary family and individual counseling and therapy for Plaintiffs;

5.  The cost of the unnecessary and inappropriate therapies and quack medicine that Defendants required Plaintiffs seek for H.P.;

6. Physical pain and suffering in the past;

7. Physical pain and suffering, in reasonable probability, sustained in the future;

8. Mental anguish in the past;

9. Mental anguish, in reasonable probability, sustained in the future;



152.   Defendants move for the Court to compel mediation as per the agreements between parties.

## X.   PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final

trial Plaintiffs have and recover:

1.   Judgment against Defendants for a sum in excess of the minimum jurisdictional limits

      of this Court;

2.   Pre-judgment at the highest legal rate;

3.   Reasonable and necessary attorney's fees;

4.   Taxable Court costs;

5.   Post-judgment interest on the above amount at the highest legal rate; and

6.   Such other and further relief to which Plaintiff may show themselves justly entitled in

      law or equity.

Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390


By:___*/s/ Amy C. Welborn*_____
        Amy C. Welborn
        State Bar No. 24012853
        amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS



## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 28th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on 04 14 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:



4/16/2025 9:13 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Candy Schmidt

CAUSE NO.  D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
|     Defendants. | § | 345th JUDICIAL DISTRICT |

## PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL MEDIATION

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and Supplemental Motion to Compel Mediation (the "Petition") against Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually ("Gonzalez") (collectively "Defendants") and would show the Court as follows:

### I. INTRODUCTION

1.    This Motion seeks to enforce the terms of a written contract between the Parties, specifically the "AMS Year-Round All School Enrollment Agreement " (hereinafter "Contract") and attached as Exhibit 1 and incorporated herein by reference.

2.    The Contract contains a provision requiring the parties to participate in non-binding mediation prior to initiating litigation.



## II. ARGUMENT

3.      The Parties have a dispute regarding Plaintiffs' termination, discrimination, retaliation, and other claims as stated in the Plaintiffs' Original Petition and Motion to Compel Mediation, incorporated herein by reference.  The dispute between the Parties falls squarely within the scope of the mediation clause and directly relate to the terms of the Contract.

4.      Paragraph 12 of the Contract, titled "Governing Law/Disputes/Waiver of Jury Trial," states, in relevant part: "In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation." See Exhibit 1.

5.      Plaintiffs have requested that Defendants mediate this matter prior to the filing of litigation and were unsuccessful.  Suit was filed seeking this Court to compel mediation as per the contract.

6.      A valid and enforceable contract exists between the Parties. The Contract clearly and unequivocally requires the Parties to participate in non-binding mediation before resorting to litigation.

8.      Plaintiffs have complied with the terms of the contract by attempting to resolve the matter informally and requesting pre-suit mediation, but these attempts have been unsuccessful.  To date, Defendants have refused to participate in mediation, violating the terms of the contract.

11.      This court has authority to order the parties to mediation under Texas Civil Practices and Remedies Code Sec. 154.021.



## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully requests that the Court:

1. Grant the Motion to Compel Mediation;

2. Order the Parties to participate in non-binding mediation within the next 30 days with the Parties equally bearing the cost of mediation;

3. Stay any further proceedings in this case, including deadlines for pleadings and discovery, until the mediation has been completed or has reached an impasse;

4. Grant any such other and further relief, in law or equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390

By:     /s/ Amy C. Welborn
         Amy C. Welborn
         State Bar No. 24012853
         amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS

3



## CERTIFICATE OF CONFERENCE

I hereby certify by my signature above that I have communicated by phone and email with counsel Chris Schiltz and we were unable to agree to mediation.

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 16th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com

4



# EXHIBIT 1

██████ **Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood



**AMS Year-Round All School Enrollment Agreement 24-**

### Introduction

██████

Entering Year: **2024 - 2025** Date of birth: ██████

This contract ("Contract") is between Austin Montessori School ( "School") and the parent or legal guardian ("Parent," singular or plural, as applicable) of the above-mentioned student ("Student"). Parent must complete and sign this Enrollment Contract and Tuition Schedule by clicking "submit" to the School for processing. Once submitted, a copy is available for your records in the Files & Forms section of your profile.

**Parent Partnership Agreement**

By signing this contract, Parent agrees to the policies and guidelines outlined in the <u>AMS Parent Community Handbook and Partnership Agreement</u>. **This is a legally binding contract. Read it carefully.**

### Tuition and Fees

Annual tuition is listed under the "Expenses" section below. Parent agrees to pay the tuition specified below according to the terms of this Contract. Parent acknowledges that the tuition changes as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the published tuition and fee schedule:
<u>AMS Tuition and Fee Schedule 2024 - 2025</u>.

**New Family Fee**

A family new to Austin Montessori School will be charged a one-time fee of $500. This fee will be added to the Smart Tuition account and is in addition to the tuition and fees listed on the Enrollment Contract.

### Expenses

Children's House - Year Round $20,265.00 **Total Expenses:** $20,265.00

**Total Due: $20,265.00**

### Due at Enrollment

Deposit $300.00 **Total Due at Enrollment:** $300.00

Please review the descriptions below for the available payment plans, and then choose your desired option in the section below.

Printed 1/17/2024 Page 1 of 4



**AMS Year-Round All School Enrollment Agreement 24-**

·•<u>One Payment Option:</u> payment of tuition for the Student's program to be paid in one payment on or before June 3, 2024.

·•<u>Monthly Payment Plan Option for Regular Year Programs:</u> payment of tuition for the Student's program to be paid in 12 equal payments, with the first payment due on August 3, 2024, and on the 3rd day of each month thereafter through July 3, 2025. The monthly payment plan option will incur a fee of $27.08/month ($325 total/year)

12 Month Plan
12 Payments

**Terms of Enrollment**

**Austin Montessori School Terms of Enrollment**

Parent understands that all persons responsible for paying any of the amounts due under this Contract must execute the Contract and that all such persons are jointly and severally liable for the amounts due as set forth herein. Parent's signature and/or initials on this Contract evidence Parent's understanding and agreement to the terms of this Contract, as follows:

1.•**Enrollment**: Student will be enrolled for the 2024-2025 academic year. Parent is aware that a final determination of grade and classroom placement will be made by the School in accordance with the School's admissions policies and these decisions are made at the School's discretion. This Contract is valid only for the academic year stated and does not entitle Student to any future enrollment.

2.•**Tuition Obligation**: Parent understands that Student is being enrolled for the academic year covered by this Contract (or remaining portion thereof, in the case of a mid-year enrollment or mid-year move to another level). Parent acknowledges that the tuition and fees change as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the School's published tuition and fee schedule. Parent is responsible for the full tuition amount through the end of the academic year even if Student is withdrawn from or ceases to attend the School. Parent further understands that the overhead expenses of the School do not diminish with the departure of a student during the course of the school year and agrees that it is impossible for the School to determine at the time of the execution of this Contract the damage and loss to the School that would occur due to the later cancellation/withdrawal of students who have enrolled. Therefore, once this Contract has been submitted to the School, Parent becomes liable for the tuition, according to the following schedule:

·•Through May 1, 2024 – responsible for 25% of annual tuition payment

·•After May 1, 2024 – responsible for 100% of annual tuition payment

3.•**Termination Procedures**: Parent may terminate this Contract by submitting a WRITTEN termination notice ("Termination Notice") to the Head of School by May 1, 2024 ("Partial Release Date"). The Termination Notice must (a) be dated, (b) state the Student's name, (c) provide a reason for the termination of the Contract; and (d) be RECEIVED by the Head of School on or before the Partial Release. If such Termination Notice is received before the Partial Release Date, Parent will be partially relieved of tuition obligation as provided in Paragraph 2, above.

4.•**School/Family Partnership**: A positive and constructive working relationship between the School and Parent is essential to the fulfillment of the School's educational purpose. Thus, the School reserves the right not to extend the privilege of enrollment or re-enrollment to Student if the School reasonably concludes that the actions of Parent make such a positive and constructive relationship impossible or otherwise seriously interfere

Printed 1/17/2024    Page 2 of 4

**Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood





**AMS Year-Round All School Enrollment Agreement 24-**

with the School's accomplishment of its educational purpose. Moreover, the School reserves the right to dismiss Student at any time if, in the judgment of the Head of the School, conduct of anyone directly associated with Student, including but not limited to Student's Parent, in or out of the School, is not in keeping with the School's accepted standards or principles. There will be no refund of tuition in the case of such dismissal and any unpaid balance is payable in full according to the terms of this Contract. If for any reason, the School administration determines that it is in the best interest of the School, The School also reserves the right to withdraw an offer of enrollment or re-enrollment at any time, and/or to nullify an executed Enrollment Contract, if the School administration determines, in its sole discretion, that doing so is in the best interest of the School.

5.•**Tuition Assistance**: Parent understands that if the Student has applied for or received a tuition assistance award toward the amount of tuition hereunder; the Parent remains primarily responsible for all obligations under this Contract. Upon Parent's acceptance of this contract and the tuition assistance award, Parent agrees to pay the balance due pursuant to the payment plan established by the School.

6.•**Probationary Enrollment for New Students:** All new enrollments are probationary for an eight-week period. If the school is concerned that this enrollment is not in the best interest of the child or the classroom, a conference will be held before the end of the eight-week period with the Head of School, Level Director, Director of Enrollment Management, and parents. Possible outcomes include an agreement to terms of continued, conditional enrollment, or withdrawal of enrollment. The decision to continue or withdraw enrollment is at the sole discretion of the school and is final. The school reserves the right to refund any portion of the tuition based upon the student's withdrawal from the school. Any refund shall be at the sole discretion of the school. In accordance with Austin Montessori School's admissions policy, enrollment beyond the eight-week period lies solely at the discretion of Austin Montessori School.

7.•**Termination of Student's Attendance**: The School has the right to suspend or terminate any Student if (i) in the sole discretion of the School administration, it is determined that the continued attendance of the Student is detrimental to the School community, the Student or to the other students of the School, or (ii) the Parent has failed to pay all or any part of the tuition or fees required under this Contract.

8.•**School Rules**: Student's enrollment at the School is subject to the general statements, rules regulations, conditions, traditions, and financial terms contained in the School's Community Handbook and other published documents, which may be amended from time to time. Parent acknowledges that Parent and Student must abide by such School rules and guidelines.

9.•**Transcripts/Records**: All accounts must be paid in full before records and transcripts can be released or transferred to other schools. Student will not be allowed to continue to attend classes or other programs or activities unless tuition and fees are paid by stated deadlines (or until Parent makes other written arrangements acceptable to the School). The School shall have the right to take such legal action as it may deem appropriate to collect all amounts which are not paid when due. In the event that the School takes legal action to enforce the terms of the Contract, Parent shall be responsible for all costs, including reasonable attorney's fees and costs (whether incurred before, during or after the filing of the lawsuit).

10.•**Delinquent Payments**: Parent understands and agrees that a late charge of $35 will be added for any payment not received within 10 days after the due date ("Late Payment"). Parent understands that at no time does the School intend to contract for, charge, or receive interest in excess of the maximum amount permitted by law and, if it is determined that the School has done so, the School shall credit the excess to any remaining tuition or fees due under the Contract or refund the excess to Parent. In the event that a Parent is more than 90 days in arrears with any tuition or fees due under the Contract, the School reserves the right to accelerate the remaining tuition and fees due under this Contract.

11.•**Release of Student Records**: Parent consents and holds the School harmless for the release of Student's records and information upon request by an education institution or law enforcement agency. Parent also releases and holds the School harmless from any liability stemming from such use, disclosure, or release of Student's records or information.

12.•**Governing Law/Disputes/Waiver of Jury Trial**: This Contract shall be governed under the laws of the State of Texas. In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation. The costs of mediation shall be equally borne between the parties. In the event of litigation, the venue of any action hereunder shall lie exclusively within the Circuit Court of Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury.

Printed 1/17/2024 Page 3 of 4

**Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood





**AMS Year-Round All School Enrollment Agreement 24-**

13.•**Understanding of Terms**: Please read this Contract carefully. By signing below, Parent acknowledges that Parent understands the terms of this Contract, Parent's obligation to pay the full year's tuition even if the Student is withdrawn or dismissed, the Parent's option to terminate, and all other obligations set forth herein. If Parent has questions about the terms, Parent is encouraged to seek the advice of counsel or to seek clarification from the Director of Admission.

14.•**Force Majeure**: The School's duties and obligation under this Contract shall be suspended immediately without notice during all periods that the School is closed because of force majeure events including, but not limited to, any fire, act of God, hurricane, war, governmental action, an act of terrorism, epidemic, pandemic, strike, civil unrest, or any other event beyond the School's control. If such an event occurs, the School's duties and obligations in this Contract will be postponed until such time as the School, in the sole discretion of the School administration, may safely reopen. In the event that the School cannot reopen due to an event under this clause, the School is under no obligation to refund any portion of the tuition paid.

*Austin Montessori School does not discriminate on the basis of race, ethnicity, national origin, ancestry, **gender**, gender identity or expression, sexual orientation, **age, or disability** in the administration of its hiring, **admissions policies**, tuition assistance program, or other school-administered programs.*

To ensure a place for the Student, this Contract must be executed and submitted to the School, along with the $300 registration fee.

Ross Ponder

                                                                             Signature Date

Sarah Ponder                         Sarah Ponder 1/17/2024 Signature Date

Accepted by Austin Montessori School, Inc. a Texas non-profit corporation

# Grae Baker

**Name:** Grae Baker
**Title:** Head of School

**School Signature**

Grae Baker





## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Amy Welborn on behalf of Amy Catherine Welborn
Bar No. 24012853
amy@welborn-law.com
Envelope ID: 99772682
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL
MEDIATION
Status as of 4/17/2025 2:43 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chris Schulz | | cschulz@slh-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on _____ 04/21/2025 _____

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

A. HENRIQUEZ QUESADA



4/24/2025 5:55 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Daniel Smith

**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| *Defendants.* | § | 345TH DISTRICT COURT |

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THIS COURT:

**PLEASE TAKE NOTICE** that on April 24, 2025, Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, individually, and Jinny Gonzalez, individually (collectively "Defendants") in the above-captioned action removed this action to the United States District Court for the Western District of Texas, Austin Division by filing a Notice of Removal in that Court. A copy of the Notice of Removal is attached as **Exhibit A** and is fully incorporated herein by reference. Accordingly, under 28 U.S.C. § 1446(d), this Court should proceed no further unless and until this case is remanded, if ever.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Christopher Schulz*
**CHRISTOPHER SCHULZ**
State Bar No. 24060576
Email: cshulz@slh-law.com
**ELIZABETH ANGELONE**
State Bar No. 24077349
Email: eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, the foregoing was e-filed with the Clerk of the Court

and a copy will be sent via e-service to the attorney of record for Plaintiffs, namely:

Amy C. Welborn
**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

*/s/ Christopher Schulz*
Attorney for Defendants

2



# EXHIBIT A



### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, *Plaintiffs,* | § § § § | |
| v. | § § | CIVIL ACTION NO. 1:25-cv-00615 |
| AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, *Defendants.* | § § § § § § | |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, individually, and Jinny Gonzalez, individually (collectively "Defendants") hereby give notice of the removal of this action from the 345th Judicial District Court of Travis County, Texas to the United States District Court for the Western District of Texas, Austin Division. In support of the Notice of Removal, Defendants allege as follows:

### I.    NATURE OF THE SUIT

Austin Montessori School ("AMS") is a private, non-profit 501(c)(3) organization that provides a Montessori education to children and adolescents aged 16 months to 15 years. For the 2024-2025 school year, Plaintiffs Ross and Sarah Ponder entered into an Enrollment Agreement ("Agreement") with AMS, under which the Ponders enrolled their children, H.P., L.P., and R.P. **Exhibit 1, pp. 38-41**. Plaintiffs assert that shortly after the children's enrollment, on December 3, 2024, H.P. was formally diagnosed with ADHD. **Exhibit 1, p. 17**. Plaintiffs assert eleven (12) causes of action against Defendants, including claims for negligence, breach of contract, fraud, civil conspiracy, and violations of the Americans with Disabilities Act and Section 504 of the

Rehabilitation Act. *Id.*, **pp. 22-32**.

## II.    REMOVAL IS TIMELY

This action is currently pending in the 345th District Court of Travis County, Texas, under the case style *Ross Ponder and Sarah Ponder, Individually and as Next Friends of H.P., L.P., and R.P., Minors v. Austin Montessori School, Inc., Ronald Grae Baker, Individually, and Jinny Gonzalez, Individually*, Cause No. D-1-GN-25-002212 (the "State Action"). The plaintiffs initiated the State Action on March 28, 2025, and on April 1, 2025, the defendants, through counsel, accepted service of the citation and petition. **Exhibit 2**. Accordingly, this Notice is timely filed pursuant to 28 U.S.C. § 1446(b).

## III.    THE COURT HAS ORIGINAL JURISDICTION OVER ONE OR MORE OF PLAINTIFFS' CLAIMS

Plaintiffs assert claims of violations of Title III of the Americans with Disabilities Act ("ADA") under 42 U.S.C. §§ 12182(a), 12182(b)(2)(A), 12182(b)(1)(A)(i), and 12181(7)(j) (Count 6). **Exhibit 1, p. 26**. Plaintiffs also assert claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), alleging failure to accommodate as well as disability-based discrimination and retaliation (Counts 7 and 12). *See* **Exhibit 1, pp. 27-32** (Pl.'s Orig. Pet. pp. 21-26); 29 U.S.C. § 794. Since this case involves federal questions, the Court has original jurisdiction over the Plaintiffs' ADA and Section 504 claims pursuant to 28 U.S.C. § 1331, as these claims constitute a civil action arising under the U.S. Constitution, federal laws, or treaties. Therefore, removal is proper.

## IV.    THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

The Court has supplemental jurisdiction over Plaintiffs' state law claims. In any civil action of which the federal district courts have original jurisdiction, the federal district courts shall have supplemental jurisdiction over all other claims that are related to claims in the action

within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). All of the Plaintiffs' claims relate to their relationship with Defendants, and all claims or causes of action comprise the same case or controversy between the parties. *See* **Exhibit 1**. Because all of the Plaintiffs' claims are interrelated, the Court has supplemental jurisdiction over Plaintiffs' claims that arise under state law. *See* 28 U.S.C. § 1367(a). Consequently, removal is proper under 28 U.S.C. § 1441(a), and the Court may exercise supplemental or pendent jurisdiction over any related state law claims.

## V.   THIS NOTICE IS PROCEDURALLY CORRECT

Defendants submit as exhibits to this Notice true and correct copies of the documents required by 28 U.S.C. § 1446(a), including the State Action Docket Sheet, Original Petition, Citations, and related documents, which are attached hereto and incorporated as **Exhibit 1**. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be provided to all parties and the Clerk of the 345th Judicial District Court of Travis County, Texas. The required filing fee for this removal has been paid.

## VI.   JURY DEMAND

Plaintiffs requested a jury trial in the State Action.

## VII.   NON-WAIVER OF DEFENSES

By removing this case to federal court, Defendants do not waive any available defenses, including any defenses under Federal Rule of Civil Procedure 12, nor do Defendants admit any allegation asserted in Plaintiffs' Petition filed in the State Action.

WHEREFORE, Defendants remove this action from the 345th Judicial District Court of Travis County, Texas, to the United States District Court for the Western District of Texas, Austin Division so that this Court may assume jurisdiction over the case as provided by law.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Christopher Schulz*
CHRISTOPHER SCHULZ
State Bar No. 24060576
Email: cshulz@slh-law.com
ELIZABETH ANGELONE
State Bar No. 24077349
Email: eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the attorney

of record for Plaintiffs, namely:

Amy C. Welborn
WELBORN LAW LLC
8712 Mesa Suite B206
Austin, Teas 78759
Email: amy@welborn-law.com

*/s/ Christopher Schulz*
Attorney for Defendants



JS 44 (Rev. 04/21)    Case 1:25-cv-00615    Document 1-1    Filed 04/24/25    Page 1 of 2

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ROSS PONDER & SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., &R.P., MINORS, | AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, Indiv.; & JINNY GONZALEZ, Indiv. |

**(b)** County of Residence of First Listed Plaintiff    Travis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Travis
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Amy C. Welborn, WELBORN LAW LLC, 8712 Mesa Suite, B206, Austin, Texas 78759, 512-825-3390

Attorneys *(If Known)*
Christopher H. Schulz & Elizabeth Angelone; Schulman, Lopez, Hoffer & Adelstein, LLP, 9011 Mountain Ridge Dr. Ste. 210, Austin, Texas 78759  512-840-0022

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☒ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

### V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 12182(a), 12182(b)(2)(A), 12182(b)(1)(A)(i), and 12181(7)(j); 29 U.S.C. § 794
Brief description of cause:
Plaintiffs assert claims of violations of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, alleging failure to

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 04/24/2025 | /s/ Christopher H. Schulz |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
... Select Division        DIVISION

Supplement to JS 44 Civil Cover Sheet
Cases Removed from State District Court

This form must be filed with the Clerk's Office no later than the **first business day** following the filing of the Notice of Removal. Additional sheets may be used as necessary.

The attorney of record for the removing party **MUST** sign this form.

**STATE COURT INFORMATION:**

1.    Please identify the court from which the case is being removed; the case number; and the complete style of the case.

345th Judicial District Court of Travis County, Texas; D-1-GN-25-002212; Ross Ponder and Sarah Ponder, Individually, and as Next Friend of H.P., L.P., and R.P., Minors v. Austin Montessori School, Inc., Ronald Grae Baker, Individually, and Jinny Gonzalez, Individually.

2.    Was jury demand made in State Court?        ☒ Yes        ☐ No

If yes, by which party and on what date?

**Plaintiffs**                    03/28/2025
Party Name                    Date

**STATE COURT INFORMATION:**

1.    List all plaintiffs, defendants, and intervenors still remaining in the case. Also, please list the attorney(s) of record for each party named and include the attorney's firm name, correct mailing address, telephone number, and fax number (including area codes).

PLAINTIFFS: ROSS PONDER & SARAH PONDER, Indiv., & AS NEXT FRIEND OF H.P., L.P., &R.P., MINORS. Plf. attry: Amy C. Welborn, WELBORN LAW LLC, 8712 Mesa Suite, B206, Austin, TX 78759, 512-825-3390. DEFENDANTS: AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, Indiv.; & JINNY GONZALEZ, Indiv. Defs Attrys: Christopher H. Schulz & Elizabeth Angelone; Schulman, Lopez, Hoffer & Adelstein, LLP, 9011 Mountain Ridge Dr., Ste. 210, Austin, TX 78759, 512-840-0022

2. List all parties that have not been served at the time of the removal, and the reason(s) for non-service.

TXWD - Supplement to JS 44 (Rev. 9/2019)



3.    List all parties that have been non-suited, dismissed, or terminated, and the reason(s) for their removal from the case.

**COUNTERCLAIMS, CROSS-CLAIMS, and/or THIRD-PARTY CLAIMS:**

1.    List separately each counterclaim, cross-claim, or third-party claim still remaining in the case and designate the nature of each such claim.  For each counterclaim, cross-claim, or third-party claim, include all plaintiffs, defendants, and intervenors still remaining in the case.  Also, please list the attorney(s) of record for each party named and include the attorney's firm name, correct mailing address, telephone number, and fax number (including area codes).

**VERIFICATION:**

Christopher H. Schulz & Elizabeth Angelone          04/24/2025
Attorney for Removing Party                                        Date

Defendants
Party/Parties

(NOTE:  Additional comment space is available on page 3)

TXWD - Supplement to JS 44 (Rev. 9/2019)



**ADDITIONAL COMMENTS (As necessary):**



# EXHIBIT 1



# REGISTER OF ACTIONS

## CASE NO. D-1-GN-25-002212

| ROSS PONDER,SARAH PONDER VS. AUSTIN MONTESSORI SCHOOL, INC.,RONALD BAKER,JINNY GONZALEZ | § § § § | Location: **345th District Court** Judicial Officer: **345TH, DISTRICT COURT** Filed on: **03/28/2025** |
|---|---|---|

---

### CASE INFORMATION

Case Type: **Other Civil**

Case Status: **03/28/2025   Open**

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Plaintiff** | **PONDER, ROSS** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| **Defendant** | **AUSTIN MONTESSORI SCHOOL, INC.** | |
| | **BAKER, RONALD GRAE** | |
| | **GONZALEZ, JINNY** | |
| **As Next Friend Of** | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| **Minor Child** | **P., H.** | |
| | **P., L.** | |
| | **P., R.** | |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|

#### EVENTS

| | |
|---|---|
| 03/28/2025 | ORIGINAL PETITION/APPLICATION (OCA) Party: Plaintiff PONDER, ROSS; Plaintiff PONDER, SARAH Atty/Pro Se: Attorney WELBORN, AMY CATHERINE *PLAINTIFFS ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION* |
| 04/16/2025 | MOTION *PLAINTIFFS SUPPLEMENTAL MOTION TO COMPEL MEDIATION* |

#### SERVICE

| | |
|---|---|
| 04/01/2025 | Citation AUSTIN MONTESSORI SCHOOL, INC. Issued |
| 04/01/2025 | Citation BAKER, RONALD GRAE Issued |
| 04/01/2025 | Citation |



PAGE 1 OF 2

*Printed on 04 17 2025 at 2 30 PM*

TRAVIS COUNTY DISTRICT CLERK

# REGISTER OF ACTIONS
### CASE NO. D-1-GN-25-002212

GONZALEZ, JINNY
Issued

| DATE | | FINANCIAL INFORMATION | |
|---|---|---|---|
| | **Plaintiff** PONDER, ROSS | | |
| | Total Charges | | 374.00 |
| | Total Payments and Credits | | 374.00 |
| | **Balance Due as of 04/17/2025** | | **0.00** |
| 03/31/2025 | Charge | Plaintiff PONDER, ROSS | 374.00 |
| 03/31/2025 | E-File Electronic    Receipt # 2025-016528 Payment | Plaintiff PONDER, ROSS | (237.00) |
| 03/31/2025 | Credit | Plaintiff PONDER, ROSS | (137.00) |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on _04/17/2025_

VELVA L. PRICE

DISTRICT CLERK

By Deputy;

A. HENRIQUEZ QUESADA

Printed on 04 17 2025 at 3 30 PM

CITATION

THE STATE OF TEXAS

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

vs.

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:     **RONALD GRAE BAKER**
        **5006 SUNSET TRAIL**
        **AUSTIN TX 78745**
        **OR**
        **10521 REDMOND ROAD**
        **AUSTIN TX**
        **OR WHEREVER FOUND**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX 78759**

_____

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at

_____ within the County of _____ on the _____ day

of _____, _____, at _____ o'clock ____M., by delivering to the within named

_____, each in person, a true copy of this citation together with

the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached

such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

_____
Notary Public, THE STATE OF TEXAS
**D-1-GN-25-002212**

**SERVICE FEE NOT PAID**



C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

vs.

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:    AUSTIN MONTESSORI SCHOOL, INC.
       BY SERVING ITS REGISTERED AGENT SANDRA BARTHOLOME
       5006 SUNSET TRAIL
       AUSTIN TX 78745

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN
8712 MESA, SUITE B206
AUSTIN, TX  78759**

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at

_____ within the County of _____ on the _____ day

of _____, _____, at _____ o'clock ____M., by delivering to the within named

_____, each in person, a true copy of this citation together with

the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached

such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

_____
Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the

_____ day of _____, _____.        By: _____

_____
Printed Name of Server

_____
_____ County, Texas
Notary Public, THE STATE OF TEXAS
**D-1-GN-25-002212**

**SERVICE FEE NOT PAID**



C I T A T I O N

T H E  S T A T E  O F  T E X A S

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

vs.

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:     JINNY GONZALEZ
        5006 SUNSET TRAIL
        AUSTIN TX 78745
        OR
        2907 POPS WAY
        AUSTIN TX 78745
        OR WHEREVER FOUND

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the <u>PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION</u> in the above styled and numbered cause, which was filed on <u>MARCH 28, 2025</u> in the <u>345TH DISTRICT COURT</u> of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, <u>APRIL 01, 2025</u>

REQUESTED BY:
AMY CATHERINE WELBORN
8712 MESA, SUITE B206
AUSTIN, TX  78759

_____
Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

            **Ruben Tamez, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock _____M., and executed at
_____ within the County of _____ on the _____ day of
_____, _____, at _____ o'clock _____M., by delivering to the within named
_____, each in person, a true copy of this citation together with the <u>PLAINTIFFS</u>
<u>ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION</u> accompanying pleading, having first attached such copy of such citation to such copy
of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

                                        _____
                                        Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the

_____ day of _____, _____.         By:_____

                                        _____
                                        Printed Name of Server

_____        _____ County, Texas
Notary Public, THE STATE OF TEXAS
D-1-GN-25-002212                                **SERVICE FEE NOT PAID**



3/28/2025 4:24 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Ruben Tamez

D-1-GN-25-002212

CAUSE NO. _____

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, <br>     Plaintiffs, <br><br> VS. <br><br> AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, <br>     Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | IN THE DISTRICT COURT <br><br><br><br> TRAVIS COUNTY, TEXAS <br><br> 345TH, DISTRICT COURT <br><br> _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend

of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and file their Original Petition and

Motion to Compel Mediation (the "Petition") against Defendants Austin Montessori School, Inc.

("AMS"), Ronald Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually

("Gonzalez") (collectively "Defendants") and would show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas

Rules of Civil Procedure.

### II.    PARTIES

2.    Plaintiffs Ross and Sarah Ponder are the parents of H.P., L.P., and R.P., minors. Plaintiffs

reside in Travis, County, Texas.

3.    Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place

of business at 5006 Sunset Trail, Austin, Texas 78745. Austin Montessori School, Inc. can be

served through its registered agent, Sandra Bartholome at 5006 Sunset Trail, Austin, Texas 78745.

4.    Defendant Ronald Grae Baker is an individual that resides in and can be served at his

principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at his residence at 10521 Redmond Road, Austin, Texas 78739.

5.      Defendant Jinny Gonzalez is an individual that resides in Travis County and can be served at her principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at her residence at 2907 Pops Way, Austin, Texas 78745.

### III.      JURISDICTION AND VENUE

6.      Subject matter jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.      Venue us proper in Travis County, Texas, under Texas Civil Practice and Remedies Code Sec. 15.002(a) as all or substantially all of the events that give rise to this claim occurred in Travis County.

### IV.      SUMMARY

8.      The Ponders fully embraced Montessori practices and were excited to have enrolled their children, H.P., L.P., and R.P., at AMS.  Unfortunately, it became evident over time that AMS had adopted their own practices and interpreted Maria Montessori teachings in a way that was meaningfully different from other Montessori schools.  AMS's administrative staff had their own beliefs and practices that were not explained prior to enrolling the Ponder children.  These practices were very harmful to the Ponder children, especially H.P.

9.      The Ponders had a history of ADHD in their family and as such wanted to put their children in a Montessori School because studies have shown that an adapted educational environment, such as a Montessori school is beneficial for ADHD children. Only after contracting with AMS, were the Ponders made aware that Defendants had major issues with an ADHD diagnosis in children and treatment of ADHD with medication.



10.     Unfortunately, AMS did not ascribe to the inclusive Montessori teachings. AMS failed to admit that they discriminate against those with ADHD, did not believe children should be diagnosed with ADHD, and did not believe in the use of medication to treat the diagnosis. AMS further did not disclose that if a child had ADHD behaviors, AMS would apply their own form of quack medicine in treating the child. Nor did AMS admit that a diagnosis of ADHD and/or treatment of an ADHD diagnosis with medication would result in expulsion. Instead, they fraudulently induced the Ponders into contracts and then discriminated against H.P. and failed to provide him accommodations for his disability.

11.     Further, AMS allowed and supported Jinny Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license. The AMS administration fully supported Jinny Gonzalez and allowed her to make diagnoses of children, knowing she had no medical training. Ms. Gonzalez "diagnosed" H.P. with "an underdeveloped will" in September 2023 and offered to treat H.P.'s disorder. Based on her diagnosis, Ms. Gonzalez made specific demands of the Ponders as part of her quack medicine treatment. Her treatment plan was psychologically abusive, harmful, and disruptive.

12.     To prevent exposure of AMS's quack medical and/or manipulative controlling practices and other harmful practices, AMS refused to provide important information to the parents of the children attending AMS. The parents of AMS students were not given meaningful opportunities to communicate with the staff working with their children. H.P. was often isolated from his peers and taken out of the classroom with a staff person. The Ponders were provided very minimal information about individuals who were alone with and in charge of H.P.'s supervision. The Ponders had a right to know if this individual was qualified to be working with their child. The Ponders had a right to know what this individual was doing with their child when he was isolated

3



and H.P.'s reaction to this treatment method the school had imposed upon H.P.    This communication was critical to H.P.'s medical treatment.    AMS had created a medical treatment plan and then failed to allow the Ponders to access medical records, school records, and treatment records in violation of state and federal law.

13.    The Ponders were repeatedly called to AMS on short notice to pick up H.P. and/or R.P. without being given any information regarding the alleged incident that had occurred.    It was impossible to discern if there were actual issues with H.P. or R.P. or the nature of the alleged concerns because AMS hid the information to the detriment of the entire Ponder family.

14.    Upon questioning AMS's quack medicine, controlling, and manipulative practices, and bringing the concerns to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling all of the Ponder children without notice, including the oldest child, who was in AMS's elementary classroom.

## V.    FACTS

15.    The Ponders first enrolled at AMS in August of 2023.  The Ponder children had been enrolled in another Montessori school and the children thrived in the Montessori environment. The Ponders live very close to AMS and hoped to enjoy the opportunity to walk to school and feel a close connection to the AMS community.   The Ponders were further drawn to the promise of collaboration and communication in the education of their three children and had hoped to keep all three children enrolled through their middle school education. The Ponders had believed AMS would provide a nurturing supportive environment for their children of all abilities and learning styles in keeping with Maria Montessori's teachings.

16.    The Ponders were told by the AMS administration multiple times from 2022 to 2023 that it was extremely rare to be admitted when children were over 4.5 years old.  When the May 2023

4



fall admission opened, they were told to take it, as it was very unlikely that a spot would be available the following year.

17.    The Ponders enrollment contracts were for an 8 am-3:15 school day (full-time) for all three children. The AMS administration did state that lunchtime pickup was an option if a child was not a napper, making it seem that a failure to nap would not prevent the student's success at AMS. (However, students were not required to nap after age 4.5.) While the Ponders were required to remain under contract when two of the three children's school day hours were reduced, the reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant. This caused great financial burden to the Ponders.

18.    H.P.'s first day at AMS was August 17, 2023. AMS provided an update and noted that there were no issues when H.P. napped. It was also noted that H.P. did not like his lunch, which the Ponders had prepared according to AMS's strict school lunch requirements.

19.    On August 20, 2023, H.P. turned four years old.

20.    On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time. A meeting was immediately held the same day to address the matter.

21.    Regardless, on Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day because he was not napping. The Ponders were told this was a transition period for AMS to allow H.P. to get used to the new classroom. The Ponders were not given any alternatives and were told that they had to pick him up at noon. The Ponders specifically chose to enroll their three children at AMS because it allowed for full day coverage for all their children, allowing them to work demanding full-time jobs.

22.    Throughout the next weeks, the Ponders made numerous attempts to update the school

5



regarding H.P. AMS, in turn, did not provide quality feedback but pushed H.P.'s release time to 10 am, a mere two hours after his arrival time without explanation. AMS did not offer to compensate the Ponders nor did AMS discuss letting the Ponders out of their contract. The Ponders were left financially strapped into a contract for full-time care but were receiving less than two hours a day to complete their work before they were forced to bring their young son back home.

23.    On Friday, September 8, 2023, Jinny Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation." The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred. Over the weekend the meeting was scheduled for September 11, 2023. The meeting would include the Ponders, Jinny Gonzalez and Sveta Paris. None of the classroom staff was invited to attend. Ms. Gonzalez informed the Ponders that H.P. would not be allowed to attend AMS until September 12, 2023, meaning the Ponders had to arrange childcare for H.P so that they could attend the meeting.

24.    At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative." AMS notified the Ponders that instead of trying to work with H.P. on his behaviors they were "going to control the systems." It was at this meeting and in her follow-up correspondence that Ms. Gonzalez diagnosed H.P. and laid out her treatment plan for H.P.

25.    Ms. Gonzalez's medical treatment plan required that the Ponders follow a consistent routine in the mornings and even recommended that they "modify the time each family member goes to bed and wakes up." Oddly, this consistent routine was not applied at AMS and they would disrupt the schedule of the child or parent regularly.

26.    Ms. Gonzalez instituted rules for speaking to H.P., requiring that the Ponders only provide brief and factual information to their son and that they acknowledge his feelings only with humor



and lightness.

27.    Ms. Gonzalez forbade the Ponders from walking to school and required that H.P. arrive by

car at exactly 8 am daily.  She further demanded that H.P. be seated in the car closest to the entrance

and that the Ponders were not allowed to exit the vehicle or help H.P. exit the vehicle.

28.    Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until

10 am, meaning he would attend school for only two hours a day, until another meeting could be

held in two weeks.  During this two-week period Ms. Gonzlez and AMS were treating H.P.'s

condition, she would determine if H.P. made progress in his treatment that would allow H.P. to

attend for a longer day.

29.    AMS and Ms. Gonzalez also required that the school counselor observe H.P.  Ms. Gonzalez

stated that the treatment plan would "break the habit" of H.P. being in distress.

30.    AMS informed the Ponders that the latest H.P. would be allowed at AMS was noon, even

after they had "controlled the systems" with their medical treatment plan.  Ms. Gonzalez also

demanded that the Ponders keep their phones on at all times to accommodate immediate pickups

when AMS required it.

31.    On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on

September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders.

This was scheduled for September 27, 2023.

32.    On September 15, 2023, the Ponders requested an update on H.P. and asked if he could

gradually leave a little later.  Ms. Gonzalez informed the Ponders that this would not be an option

and that H.P. would continue attending school until 10 am.  Another meeting was scheduled on

Thursday, September 21, 2023 to discuss the progress of H.P.'s treatment of his condition.

33.    On September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to



cancel the meeting due to being very busy. They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

34.     At the September 26, 2023, meeting, additional requirements were added for the Ponders by Ms. Gonzalez for the treatment of H.P.'s condition. This included feeding H.P. **on a tray in the bathroom** each morning instead of with his siblings.

35.     On September 29, 2023, the Ponders were able to have a call with H.P.'s Guide to discuss his improving progress. On October 2, 2023, H.P.'s teacher informed the Ponders that H.P. had been improving and had "the best day at school so far." There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

36.     On December 8, 2023, AMS stated that they were honored to work with the Ponders and that with regard to H.P., they "deeply desired to meet his needs." They were very positive and noted the Ponders followed the treatment plan that AMS had instituted through. Ms. Gonzalez. However, they still refused to allow H.P. to attend school full-time.

37.     AMS suggested hiring an occupational therapist to work with H.P. At the recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an occupational therapist but yet another unqualified medical provider that Ms. Gonzalez and AMS recommended as part of their quack medicine. This caused a delay in getting H.P. an OT evaluation.

38.     On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. She noted that she and Ms. Gonzalez were best suited

8



for determining when H.P. could extend his day.

39.    Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m. Again, the contractual terms and payments were for full day coverage, not a two-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

40.    On January 23, 2024, AMS informed the Ponders that they were yet again "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time. The Ponders provided more recent evidence from the school of H.P.'s positive improvements.

41.    On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. When notified of the family emergency, AMS refused to accommodate H.P. staying for a full day as contracted. They even denied a request to allow him to stay when Ross had to leave town and was unable to pick up H.P. at 11:45 am. Ross Ponder was trying to leave town to see his brother before life support was pulled. The school administration offered no meaningful condolences and did not offer reasonable courtesies for the parents.

42.    On February 20, 2024, H.P. turned 4.5 years of age. This is significant because it is AMS policy that children 4.5 years of age or older do not have to nap in Casita and are invited to stay until 3:15 p.m. daily without a nap. H.P., like all other children, should have been allowed at AMS until 3:15 p.m. daily even if he was not taking a nap. Unfortunately, AMS chose to discriminate against H.P. and refused to treat him as the other students and continued to demand that he nap.

43.    H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024. On May 16, 2024, Jinny Gonzalez informed the Ponders that they again



had staffing issues that prevented H.P.'s teacher, the one who interacted with him daily, to attend the meeting on May 17, 2024.

44.    At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended-day, as they had contracted for full-time school. The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

45.    On July 2, 2024, immediately upon her return from vacation, H.P.'s teacher communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.

46.    By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes. While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early. Additionally, AMS began requiring that R.P. also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

47.    On September 11, 2024, the Ponders notified the school that the family's beloved dog was going to have to be put down.

48.    On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns. On September 12, 2024, the AMS called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early. The Ponders were informed that AMS was "unsuccessful" and that they were not fulfilling R.P.'s need for sleep and rest. When AMS demanded the Ponders pick up their children with unreasonable notice, the Ponders made clear that they were not available because their beloved family dog, Bear, was actively dying of cancer



that afternoon in their home. Bear died around 3 pm and the Ponders were forced to coordinate emergency vet transportation while simultaneously coordinating the school pickups AMS demanded.

49.    AMS then determined that R.P. did not fit their program because she was a bad napper. The Ponders had multiple communications with AMS during the first few weeks of school and were informed she was doing well, and no napping concerns were raised. The demand that she be picked up early was shocking to the Ponders. R.P. had no problems with napping at her prior school and no concerns had been raised at AMS. (Interestingly, R.P. has no napping issues at her current Montessori school.)

50.    On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS. The Ponders asked for a review of the parent partnership agreement, as clearly AMS was in breach.

51.    On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her treatment plan for December 5, 2024. The Ponders asked to discuss if any interim changes needed to be made and informed AMS that H.P. would be going to the doctor to determine if he had ADHD. AMS refused to fill out the requested Vanderbilt questionnaire.

52.    On December 3, 2024, H.P. was formally diagnosed with ADHD. The Ponders provided the diagnosis and medical documentation to AMS immediately.

53.    On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think AMS was the right school for H.P. Ms. Gonzales stated that she did not believe in medicating a child with ADHD and did not approve of the treatment plan of H.P.'s physician. In fact, with the support of AMS, Gonzalez specifically discussed her medial plan, delaying medicating H.P. Oddly, in the meeting report, Ms. Gonzalez

11



specifically noted that some children require accommodations and that it is the Montessori philosophy to use every resource available to aid in a child's development and stated that they "deeply desired to meet his needs." H.P.'s Guide only attended the first 15 minutes, but could not stay for the whole meeting due to staffing issues.

54.    On December 6, 2024, Jinny Gonzalez, stated that H.P. could no longer benefit from a Montessori education. AMS shortened H.P.'s days to half days.

55.    On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects on the child. The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication.

56.    On December 16, 2024, the Ponders met with Ronald Grae Baker and School Advisor, Jeff Schneider. Mr. Baker told the Ponders that AMS can accommodate an ADHD diagnosis and medicinal treatment. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates on H.P.'s response to medicine.

57.    Over the holidays, the doctor was able to work to find the proper medication dose to best assist H.P. This led to significant improvement in his ADHD behaviors.

58.    From December 16, 2024, to January 27, 2025, AMS refused to provide requested feedback to the Ponders on H.P.'s response to ADHD medication. Ronald Grae Baker falsely promised to withhold an enrollment decision for the following year until the middle of the spring semester to allow AMS to observe and update the Ponders on H.P.'s response to medication.

59.    The Ponders made repeated requests for an accommodation meeting and requested that Ms. Gonzalez be taken off the team, due to her alternative treatment methods not being accepted over those of H.P.'s physician.

60.    On January 17, 2025, Ronald Grae Baker sent correspondence stating that AMS would not



be offering an enrollment contract for the following year to H.P. Mr. Baker also chastised the Ponders for requesting that Ms. Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine.

61.     On January 20, 2025, the Ponders again requested a meeting to discuss the observations of H.P. in the weeks after he had started ADHD medication. Once the Ponders shared H.P.'s diagnosis, the team no longer worked to help H.P. but alienated him and discriminated against him due to his disability.

62.     On January 24, 2025, the Ponders met with Ronald Grae Baker and Jeff Schneider, School Advisor. In preparation for this meeting, they requested to discuss communication issues and noted that these issues were pervasive throughout the school, noting other parents had similar concerns. The Ponders were concerned with the lack of communication and the systematic barriers that prevented parents from being informed of concerns regarding their children. AMS was reminded of the need to provide reasonable accommodations to H.P. The Ponders noted that no incidents had been report at AMS since winter break, and that H.P. was responding well to medication, including at church, YMCA, and other common places. Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

63.     On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services. The fact that this complaint was filed was made known to AMS on January 25, 2025. The Ponders chose to file this reported based on their experiences and after reviewing AMS's most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS.

13



64.    On January 28, 2025, Ronald Grae Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including their quack medicine. The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make change and to help all students, an effort to gain community support and raise concerns, as the discrimination and retaliation were factors all parents should be informed of when renewing enrollment. The WhatsApp group was a private, optional, parent run platform that was not associated with the school administration. A coffee was also held at the Ponders home to further discuss systematic communication issues affecting many students at AMS.

65.    On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. had ADHD but that he would be placed in a standard classroom and did not need special education or occupational therapy. The results were immediately distributed to AMS and the Ponders requested a meeting with Gina Applegate, the school support specialist, Jinny Gonzalez, and H.P.'s guide. The Ponders included Jinny Gonzalez in this communication because Ronald Grae Baker had stated it was a requirement for the continued enrollment of L.P. and R.P. in his email dated January 28, 2025.

66.    On January 30, 2025, Ronald Grae Baker sent a letter to all parents stating that the information provided by the Ponders was "misleading" and that "false claims" were made.

67.    On January 31, 2025, AMS terminated the enrollment of all three Ponder children. H.P. was denied full and equal educational access, denied disability accommodations, as the enrollment was terminated when the school received notice that H.P. had a disability, ADHD. Additionally, AMS terminated L.P. and R.P. because the Ponder parents' "actions were detrimental to the school." Clearly the actions referred to are the filing of the HHS complaint, advocating for



disability accommodations, and reaching out to other parents to discuss the concerns and determine if others were in a similar situation. The termination of the remaining Ponder children was retaliation.

68.    The impact on the family has been extreme: While attending the school, the failure to institute a 504 plan for H.P. caused developmental delays and extreme anxiety for H.P. H.P. was forced to attend expensive outside services at the demand of AMS.

69.    H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS. The level of torture he experienced was not understood until he was placed in a new school, where he is not only thriving, but has had zero behavior problems and is a model student. Clearly, the root of his behavior problems stemmed from AMS's intentional and negligent failure to address his needs. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

70.    The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family. The Ponders entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to walk their children to school and were told when and how to wake their children each morning. Maria Montessori stated, "We must respect the child, and he must understand that he is respected." AMS neither respected nor made the Ponders feel respected. Further, the Ponders were forced to spend thousands of dollars on demanded outside OT that did not address H.P.'s ADHD.

71.    Due to the change in hours, Ross Ponder was forced to quit his job, to allow him to be available to pick up the children on a moment's notice. This has been detrimental to his income in both the long and short term.



72.    The impact on Sarah Ponder's career is significant. Some of her clients were in the AMS community. Sending a letter to the entire community defaming the Ponders will have serious long-term impacts on her company's growth. Ms. Ponder is aware of at least one client that she lost due to this entire situation.

73.    The impact on the children has been significant. They were forced from their school and the friends they had expected to go to school with until they graduated middle school. They were not able to be immediately placed in school, and the oldest child is in elementary school, thus causing a severe impact to her education.

74.    The expulsion caused extreme mental anguish for the entire family. Maria Montessori stated, "The things the child sees are not just remembered; they form part of his soul." This will forever impact the Ponder family.

## VI.    CAUSES OF ACTION

### A.    Count 1- Negligence

75.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

76.    The occurrences made the basis of this suit and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligent conduct of Defendants. Defendants were negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

   a. Failing to exercise the care necessary under the circumstances;

   b. Failing to do what a reasonable daycare would have done under the circumstances;

   c. Failing to intervene to ensure a child's safety;

   d. Failing to provide proper supervision;

16



e. Failing to properly hire, qualify, train and supervise its employees;

f. Failing to provide reasonable accommodations; and

g. Failing to adhere to the Texas Minimum standards for childcare.

77.     Defendants had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

78.     Defendants had a duty to maintain a safe environment for children in its care;

79.     Defendants had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

80.     Defendants breached the duty of care by failing to care for the children, failing to supervise the children, failing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

81.     Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B.     Count 2- Negligence *Per Se***

82.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

83.     Defendants failed to exercise the mandatory standard of care in violation of the minimum standards for childcare.

84.     Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Repeatedly, AMS failed to use praise and encouragement, instead used humiliation and rejection with H.P.

85.     Texas law has specific maximums on the number of children that can be in a room. 26 TAC

17



Case 1:25-cv-00615    Document 1-3    Filed 04/24/25    Page 24 of 43

Sec. 746.1601-1615. These numbers were exceeded or the Ponder children were sent home to accommodate new students after the holidays.

86.    Accommodations recommended by qualified professionals and medical experts were not provided to H.P. in violation of 26 TAC 746.2202.

87.    AMS failed to encourage H.P. to express feelings and failed to give him appropriate attention. 20 TAC 746.2601

88.    AMS failed to comply with the regulations regarding naptimes and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321.

89.    AMS failed to notify the Ponders that AMS refused to administer or allow students to take ADHD medications in violations of 26 TAC Sec. 746.3811.

90.    AMS failed to follow the laws regarding release of children. 26 TAC Sec. 746.4103

91.    Additionally, according to AMS staff, AMS had 39 children in the Casita at one time, the location used for young children to nap. Clearly the state of Texas created these regulations to protect children. The violation of these statues harmed the Ponder family.

92.    Defendant Gonzalez violated the law by practicing medicine without a license. Defendants AMS and Baker supported and assisted Gonzalez in her medical endeavors.

93.    Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

94.    Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.

95.    As a result of the Defendants' illegal acts and/or omissions in violating the statutes, Plaintiffs sustained injuries.

**C.    Count 3- Gross Negligence**

96.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully



herein.

97.    Defendants' conduct was more than momentarily thoughtlessness or inadvertence. Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

98.    Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs. Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiffs and/or other similarly situated individuals. Plaintiffs acted with malice. Plaintiffs suffered damages and further seek punitive damages.

**D.    Count 4- Negligent Activity**

99.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

100.    Defendant AMS is the owner, operator and possessor of the daycare premises.

101.    Plaintiffs H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owned a duty to exercise reasonable care.

102.    Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

103.    Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

**E.    Count 5- *Respondeat Superior***

104.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.



105.    The negligence, carelessness, and callousness of Defendant AMS's employees proximately caused the damage and loss suffered by Plaintiffs. At all times material to this action, Defendant AMS's employees were acting in the course and scope of their employment. Accordingly, Defendant's may be held responsible for its employees' negligence under the doctrine of *respondeat superior.*

**F.    Count 6- Violations of the Americans with Disabilities Act (ADA)- Title III**

106.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

107.    Defendants discriminated on the basis of H.P.'s disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III of the ADA, 42 U.S.C Sec. 12182(a) and the title III implementing regulation at 28 C.F. R. Part 36.

108.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by failing to reasonably accommodate his disability while he attended school there in violation of 42 USCA Sec 12181(7)(J).

109.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by dismissing him from school for behaviors that were a manifestation of his disability in violation of 28 CFR Part 36.

110.    Defendant AMS discriminated against H.P. by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 USC Section 12182(b)(2) (A) (ii) and its implementing regulation 28 C.F.R. Sec. 36.302.



111.    Defendant AMS's action in disenrolling H.P. on the basis of disability, constitutes a denial of the opportunity for H.P. to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity in violation of 42 U.S.C. Sec. 12182(b)(1)(A)(i) and 28 C.F.R. Sec. 36.202.

112.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**G.    Count 7- Violations of Section 504**

113.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

114.    Defendants excluded Plaintiff H.P. from participation in activities and programs, and was denied the benefits of the services, programs, and activities and was subjected to discrimination because of his disability, ADHD.

115.    The actions of Defendant Gonzalez created an interference of professional bad faith or gross misjudgment.

116.    The actions of Defendants were done out of prejudice, malice, ill will, and/or spite against Plaintiffs.

117.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**H.    Count 8-Breach of Contract**

118.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

119.    Plaintiffs entered into a valid contract for the provision of childcare services for their three minor children.  There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

120.    Plaintiffs tendered performance according to the terms of the contact.



121.    Defendant AMS breached its duties and obligations under the contract, both explicit and implicit, pertaining to providing appropriate child care, custody, and supervision by all acts stated above.

122.    Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential.

123.    Further, Plaintiffs seek to recover their attorney fees under the Texas Civil Practices and Remedies Code.

**I.    Count 9- Fraud**

124.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

125.    Plaintiffs discovered that Defendants had been defrauding them by making promises and commitments to get Plaintiffs' payments and re-enroll their children when Defendants, particularly Defendant Baker, knew the statements were false and that he had no intention of fulfilling.

126.    Defendants made material misrepresentations that were false.  Defendants knew these statements were false or they were made recklessly without any knowledge of the truth and as a positive assertion.

127.    Defendants made the statements with the intention that Plaintiffs would act upon it and Plaintiffs acted in reliance of the representations and causing injury, damages, and harm.

128.    Plaintiffs seek treble damages and attorney fees.

**J.    Count 10- Fraudulent Inducement to Contract and Breach of Contract**

129.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

130.    The Ponders enrolled all their children at AMS because AMS stated that they followed the

22



Montessori teaching paradigm and that they would offer full-day schooling for the three children, meaning the children would attend AMS from 8 am to 3 pm Monday-Friday. The Ponders relied on these assertions when entering into contracts with AMS.

131.    The mission of the school stated that they are inclusive and "cultivate compassion and respect." Unfortunately, the administration of AMS lacked compassion and respect for the entire Ponder family.

132.    The teachings of Montessori include "protecting the autonomy and integrity" of a student and developing a program that follows "the developmental states manifested by the children" and "honor and respect each child's individual timetable for development"- (Bryant Goertz, Donna. *"Children Who Are Not Yet Peaceful: Preventing Exclusion in the Early Elementary Classroom,"* [Frog, Ltd. Berkeley, CA, 2001.]) The Montessori teachings do not include discrimination and refusal to comply with 504 and provide accommodations.

133.    The Ponders were further induced to reenroll for a second year. The AMS handbook clearly stated that the Guides would be trained by AMI and would engage in the "most authentic standard of Montessori pedagogy" and that the Guides would have an understanding of developmental milestones and ensure a structured learning approach that aligns with the AMI guidance.

134.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging. These principals were not utilized with H.P.

135.    The AMS parent handbook outlines procedures for programmatic changes that were not followed. The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations regarding the Ponder children, or hold

23



requested conferences.

136. AMS further stated that it would not discriminate and comply with ADA and Section 504

of the Rehabilitation Act of 1973, as amended. Ronald Grae Baker was the alleged coordinator,

yet the school insisted that Jinny Gonzalez be the point person and Ronald Grae Baker failed to

address or even discuss violations.

137. AMS fraudulently induced the Ponder family to contract for all three children's education.

AMS breached its contracts with the Ponders by failing to provide 504 services for H.P., failing to

allow the children to receive full day education, and failing to follow the school policies.

138. As a result of Defendants fraudulent inducement, Plaintiffs suffered harm, injury and

damages. Further, Plaintiffs seek attorney fees and treble damages.

**K.    Count 11- Civil Conspiracy**

139. Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully

herein.

140. Defendants acted in combination to seek or accomplish a course of action to commit

unlawful acts. There was a meeting of the minds of the Defendants to agree to accomplish the

above stated unlawful acts. Defendants were aware of the intended harm or wrongful conduct at

the outset of the combination or agreement. As a result, Plaintiffs suffered harm, injury and

damages.

**L.    Count 12- Retaliation**

141. Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully

herein.

142. Plaintiffs and Defendants did not agree on the use of medication to treat a child who suffers

from ADHD. While the school did not have a no medication policy, Defendant Gonzalez clearly



felt that it was unacceptable to treat H.P. in the manner his physician recommended. Ms. Gonzalez was not a doctor and had no training or experience to justify her position or the action plans she required. Ms. Gonzalez had very specific requirements for treatment of H.P., both at home and at school, including requiring the Ponders to drive to school, wake up children in a certain order, and other questionable commands. AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine. The Ponders voiced concern over these methods and were shut down by Ms. Gonzalez. Further, she failed to provide insight on what was occurring in the classroom or how any of her requirements would provide any effective change.

143.    When the Ponders asked to discuss with another staff member and remove Defendant Gonzalez from H.P.'s case, Defendant Baker refused to accommodate, chastised the Ponders for their request, fully supported Ms. Gonzalez, and expelled H.P. in retaliation for Plaintiff's medicating H.P. The school's support of Ms. Gonzalez's quack medicine is very concerning, as she is not a physician nor trained in any way on the treatment of children with ADHD.

144.    Defendant AMS has explicitly stated that it follows 504 regulations. However, AMS vehemently supported Ms. Gonzalez's refusal to follow 504 procedures. When the Ponders questioned her, AMS retaliated by expelling H.P. and days later, all of the Ponder children.

145.    Defendants retaliated for the filing of a complaint with the HHS by threatening and later expelling the Ponder children.

146.    The Ponders care not only about their own children but about the entire AMS community. When they learned that H.P. had been expelled, they decided to bring their concerns to the attention of other parents, in hopes of making AMS better for all students attending. The policies and procedures were not followed with H.P. As such, the Ponders reached out to the community so that the community, as a whole, could work together to find ways to foster better communication.



The Ponders posted a letter to all parents on the WhatsApp on January 28, 2025. The letter did not violate any rules of AMS. AMS had the letter taken down on January 30, 2025. Yet, as a further act of retaliation, AMS chose to send an email making defamatory statements against the Ponders to all families at AMS.

## VI.  DAMAGES

147.  Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

148.  Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

1.  Loss of value of the tuition/fees that Plaintiffs paid for the childcare;

2.  Loss of wages for Mr. and/or Ms./ Ponder incurred by having to stay home and care for H.P. and R.P when they were sent home early and while they began the long, slow, and careful process of finding another school/childcare to entrust their children, after undergoing such a traumatic ordeal;

3.  Medical expenses for the reasonable and necessary examination of H.P.;

4.  Medical expenses for the reasonable and necessary family and individual counseling and therapy for Plaintiffs;

5.   The cost of the unnecessary and inappropriate therapies and quack medicine that Defendants required Plaintiffs seek for H.P.;

6.  Physical pain and suffering in the past;

7.  Physical pain and suffering, in reasonable probability, sustained in the future;

8.  Mental anguish in the past;

9.  Mental anguish, in reasonable probability, sustained in the future;



152.    Defendants move for the Court to compel mediation as per the agreements between parties.

## X.    PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial Plaintiffs have and recover:

1. Judgment against Defendants for a sum in excess of the minimum jurisdictional limits of this Court;

2. Pre-judgment at the highest legal rate;

3. Reasonable and necessary attorney's fees;

4. Taxable Court costs;

5. Post-judgment interest on the above amount at the highest legal rate; and

6. Such other and further relief to which Plaintiff may show themselves justly entitled in law or equity.

Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390

By:___/s/ Amy C. Welborn_____
     Amy C. Welborn
     State Bar No. 24012853
     amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS



## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 28th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on _____04 / 19 / 2025_____
VELVA L. PRICE
DISTRICT CLERK
By Deputy:

29



4/16/2025 9:13 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Candy Schmidt

CAUSE NO. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, Plaintiffs, | § § § § | IN THE DISTRICT COURT |
| VS. | § § § | |
| AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, Defendants. | § § § § § | TRAVIS COUNTY, TEXAS 345ᵗʰ JUDICIAL DISTRICT |

## PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL MEDIATION

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and Supplemental Motion to Compel Mediation (the "Petition") against Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually ("Gonzalez") (collectively "Defendants") and would show the Court as follows:

### I. INTRODUCTION

1.    This Motion seeks to enforce the terms of a written contract between the Parties, specifically the "AMS Year-Round All School Enrollment Agreement " (hereinafter "Contract") and attached as Exhibit 1 and incorporated herein by reference.

2.    The Contract contains a provision requiring the parties to participate in non-binding mediation prior to initiating litigation.



## II. ARGUMENT

3.      The Parties have a dispute regarding Plaintiffs' termination, discrimination, retaliation, and other claims as stated in the Plaintiffs' Original Petition and Motion to Compel Mediation, incorporated herein by reference. The dispute between the Parties falls squarely within the scope of the mediation clause and directly relate to the terms of the Contract.

4.      Paragraph 12 of the Contract, titled "Governing Law/Disputes/Waiver of Jury Trial," states, in relevant part: "In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation." See Exhibit 1.

5.      Plaintiffs have requested that Defendants mediate this matter prior to the filing of litigation and were unsuccessful. Suit was filed seeking this Court to compel mediation as per the contract.

6.      A valid and enforceable contract exists between the Parties. The Contract clearly and unequivocally requires the Parties to participate in non-binding mediation before resorting to litigation.

8.      Plaintiffs have complied with the terms of the contract by attempting to resolve the matter informally and requesting pre-suit mediation, but these attempts have been unsuccessful. To date, Defendants have refused to participate in mediation, violating the terms of the contract.

11.     This court has authority to order the parties to mediation under Texas Civil Practices and Remedies Code Sec. 154.021.



## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully requests that the Court:

1. Grant the Motion to Compel Mediation;

2. Order the Parties to participate in non-binding mediation within the next 30 days with the Parties equally bearing the cost of mediation;

3. Stay any further proceedings in this case, including deadlines for pleadings and discovery, until the mediation has been completed or has reached an impasse;

4. Grant any such other and further relief, in law or equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390

By:   */s/ Amy C. Welborn*
    Amy C. Welborn
    State Bar No. 24012853
    amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS



## CERTIFICATE OF CONFERENCE

I hereby certify by my signature above that I have communicated by phone and email with counsel Chris Schiltz and we were unable to agree to mediation.

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 16th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com

4



 **Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood

# EXHIBIT 1



## AMS Year-Round All School Enrollment Agreement 24-

### Introduction

Entering Year: **2024 - 2025** Date of birth:

This contract ("Contract") is between Austin Montessori School ( "School") and the parent or legal guardian ("Parent," singular or plural, as applicable) of the above-mentioned student ("Student"). Parent must complete and sign this Enrollment Contract and Tuition Schedule by clicking "submit" to the School for processing. Once submitted, a copy is available for your records in the Files & Forms section of your profile.

**Parent Partnership Agreement**

By signing this contract, Parent agrees to the policies and guidelines outlined in the <u>AMS Parent Community Handbook and Partnership Agreement</u>.

**This is a legally binding contract. Read it carefully.**

### Tuition and Fees

Annual tuition is listed under the "Expenses" section below. Parent agrees to pay the tuition specified below according to the terms of this Contract. Parent acknowledges that the tuition changes as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the published tuition and fee schedule:

<u>AMS Tuition and Fee Schedule 2024 - 2025</u>.

**New Family Fee**

A family new to Austin Montessori School will be charged a one-time fee of $500. This fee will be added to the Smart Tuition account and is in addition to the tuition and fees listed on the Enrollment Contract.

### Expenses

Children's House - Year Round $20,265.00 **Total Expenses: $20,265.00**

**Total Due: $20,265.00**

### Due at Enrollment

Deposit $300.00 **Total Due at Enrollment: $300.00**

Please review the descriptions below for the available payment plans, and then choose your desired option in the section below.

Printed 1/17/2024 Page 1 of 4

 **Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood



**AMS Year-Round All School Enrollment Agreement 24–**

- •<u>One Payment Option:</u> payment of tuition for the Student's program to be paid in one payment on or before June 3, 2024.
- •<u>Monthly Payment Plan Option for Regular Year Programs:</u> payment of tuition for the Student's program to be paid in 12 equal payments, with the first payment due on August 3, 2024, and on the 3rd day of each month thereafter through July 3, 2025. The monthly payment plan option will incur a fee of $27.08/month ($325 total/year)

12 Month Plan
12 Payments

**Terms of Enrollment**

**Austin Montessori School Terms of Enrollment**

Parent understands that all persons responsible for paying any of the amounts due under this Contract must execute the Contract and that all such persons are jointly and severally liable for the amounts due as set forth herein. Parent's signature and/or initials on this Contract evidence Parent's understanding and agreement to the terms of this Contract, as follows:

1.•**Enrollment**: Student will be enrolled for the 2024-2025 academic year. Parent is aware that a final determination of grade and classroom placement will be made by the School in accordance with the School's admissions policies and these decisions are made at the School's discretion. This Contract is valid only for the academic year stated and does not entitle Student to any future enrollment.

2.•**Tuition Obligation**: Parent understands that Student is being enrolled for the academic year covered by this Contract (or remaining portion thereof, in the case of a mid-year enrollment or mid-year move to another level). Parent acknowledges that the tuition and fees change as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the School's published tuition and fee schedule. Parent is responsible for the full tuition amount through the end of the academic year even if Student is withdrawn from or ceases to attend the School. Parent further understands that the overhead expenses of the School do not diminish with the departure of a student during the course of the school year and agrees that it is impossible for the School to determine at the time of the execution of this Contract the damage and loss to the School that would occur due to the later cancellation/withdrawal of students who have enrolled. Therefore, once this Contract has been submitted to the School, Parent becomes liable for the tuition, according to the following schedule:

- •Through May 1, 2024 – responsible for 25% of annual tuition payment
- •After May 1, 2024 – responsible for 100% of annual tuition payment

3.•**Termination Procedures**: Parent may terminate this Contract by submitting a WRITTEN termination notice ("Termination Notice") to the Head of School by May 1, 2024 ("Partial Release Date"). The Termination Notice must (a) be dated, (b) state the Student's name, (c) provide a reason for the termination of the Contract; and (d) be RECEIVED by the Head of School on or before the Partial Release. If such Termination Notice is received before the Partial Release Date, Parent will be partially relieved of tuition obligation as provided in Paragraph 2, above.

4.•**School/Family Partnership**: A positive and constructive working relationship between the School and Parent is essential to the fulfillment of the School's educational purpose. Thus, the School reserves the right not to extend the privilege of enrollment or re-enrollment to Student if the School reasonably concludes that the actions of Parent make such a positive and constructive relationship impossible or otherwise seriously interfere



Printed 1/17/2024   Page 2 of 4

**Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood



**AMS Year-Round All School Enrollment Agreement 24-**

with the School's accomplishment of its educational purpose. Moreover, the School reserves the right to dismiss Student at any time if, in the judgment of the Head of the School, conduct of anyone directly associated with Student, including but not limited to Student's Parent, in or out of the School, is not in keeping with the School's accepted standards or principles. There will be no refund of tuition in the case of such dismissal and any unpaid balance is payable in full according to the terms of this Contract. If for any reason, the School administration determines that it is in the best interest of the School, The School also reserves the right to withdraw an offer of enrollment or re-enrollment at any time, and/or to nullify an executed Enrollment Contract, if the School administration determines, in its sole discretion, that doing so is in the best interest of the School.

5.•**Tuition Assistance**: Parent understands that if the Student has applied for or received a tuition assistance award toward the amount of tuition hereunder; the Parent remains primarily responsible for all obligations under this Contract. Upon Parent's acceptance of this contract and the tuition assistance award, Parent agrees to pay the balance due pursuant to the payment plan established by the School.

6.•**Probationary Enrollment for New Students**: All new enrollments are probationary for an eight-week period. If the school is concerned that this enrollment is not in the best interest of the child or the classroom, a conference will be held before the end of the eight-week period with the Head of School, Level Director, Director of Enrollment Management, and parents. Possible outcomes include an agreement to terms of continued, conditional enrollment, or withdrawal of enrollment. The decision to continue or withdraw enrollment is at the sole discretion of the school and is final. The school reserves the right to refund any portion of the tuition based upon the student's withdrawal from the school. Any refund shall be at the sole discretion of the school. In accordance with Austin Montessori School's admissions policy, enrollment beyond the eight-week period lies solely at the discretion of Austin Montessori School.

7.•**Termination of Student's Attendance**: The School has the right to suspend or terminate any Student if (i) in the sole discretion of the School administration, it is determined that the continued attendance of the Student is detrimental to the School community, the Student or to the other students of the School, or (ii) the Parent has failed to pay all or any part of the tuition or fees required under this Contract.

8.•**School Rules**: Student's enrollment at the School is subject to the general statements, rules regulations, conditions, traditions, and financial terms contained in the School's Community Handbook and other published documents, which may be amended from time to time. Parent acknowledges that Parent and Student must abide by such School rules and guidelines.

9.•**Transcripts/Records**: All accounts must be paid in full before records and transcripts can be released or transferred to other schools. Student will not be allowed to continue to attend classes or other programs or activities unless tuition and fees are paid by stated deadlines (or until Parent makes other written arrangements acceptable to the School). The School shall have the right to take such legal action as it may deem appropriate to collect all amounts which are not paid when due. In the event that the School takes legal action to enforce the terms of the Contract, Parent shall be responsible for all costs, including reasonable attorney's fees and costs (whether incurred before, during or after the filing of the lawsuit).

10.•**Delinquent Payments**: Parent understands and agrees that a late charge of $35 will be added for any payment not received within 10 days after the due date ("Late Payment"). Parent understands that at no time does the School intend to contract for, charge, or receive interest in excess of the maximum amount permitted by law and, if it is determined that the School has done so, the School shall credit the excess to any remaining tuition or fees due under the Contract or refund the excess to Parent. In the event that a Parent is more than 90 days in arrears with any tuition or fees due under the Contract, the School reserves the right to accelerate the remaining tuition and fees due under this Contract.

11.•**Release of Student Records**: Parent consents and holds the School harmless for the release of Student's records and information upon request by an education institution or law enforcement agency. Parent also releases and holds the School harmless from any liability stemming from such use, disclosure, or release of Student's records or information.

12.•**Governing Law/Disputes/Waiver of Jury Trial**: This Contract shall be governed under the laws of the State of Texas. In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation. The costs of mediation shall be equally borne between the parties. In the event of litigation, the venue of any action hereunder shall lie exclusively within the Circuit Court of Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury.

**Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood

Printed 1/17/2024 Page 3 of 4





Case 1:25-cv-00615    Document 1-3    Filed 04/24/25    Page 42 of 43

**AMS Year-Round All School Enrollment Agreement 24-**

13. •**Understanding of Terms**: Please read this Contract carefully. By signing below, Parent acknowledges that Parent understands the terms of this Contract, Parent's obligation to pay the full year's tuition even if the Student is withdrawn or dismissed, the Parent's option to terminate, and all other obligations set forth herein. If Parent has questions about the terms, Parent is encouraged to seek the advice of counsel or to seek clarification from the Director of Admission.

14. •**Force Majeure**: The School's duties and obligation under this Contract shall be suspended immediately without notice during all periods that the School is closed because of force majeure events including, but not limited to, any fire, act of God, hurricane, war, governmental action, an act of terrorism, epidemic, pandemic, strike, civil unrest, or any other event beyond the School's control. If such an event occurs, the School's duties and obligations in this Contract will be postponed until such time as the School, in the sole discretion of the School administration, may safely reopen. In the event that the School cannot reopen due to an event under this clause, the School is under no obligation to refund any portion of the tuition paid.
*Austin Montessori School does not discriminate on the basis of race, ethnicity, national origin, ancestry, **gender**, gender identity or expression, sexual orientation, **age, or disability** in the administration of its hiring, **admissions policies**, tuition assistance program, or other school-administered programs.*

To ensure a place for the Student, this Contract must be executed and submitted to the School, along with the $300 registration fee.

Ross Ponder

Sarah Ponder                                            Signature Date
                    Sarah Ponder 1/17/2024 Signature Date

Accepted by Austin Montessori School, Inc. a Texas non-profit corporation

# Grae Baker

**Name:** Grae Baker
**Title:** Head of School

**School Signature**
Grae Baker



Printed 1/17/2024 Page 4 of 4



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Amy Welborn on behalf of Amy Catherine Welborn
Bar No. 24012853
amy@welborn-law.com
Envelope ID: 99772682
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL MEDIATION
Status as of 4/17/2025 2:43 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Chris Schulz | | cschulz@slh-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on ___Jul 21 2025___

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

A. HENRIQUEZ QUESADA



# EXHIBIT 2



**From:** Chris Schulz <cschulz@slh-law.com>
**Date:** Tuesday, April 1, 2025 at 3:22 PM
**To:** Amy Welborn <amy@welborn-law.com>
**Subject:** Re: Service

We will accept service.

Sent from my iPhone

> On Apr 1, 2025, at 3:20 PM, Welborn, Amy <amy@welborn-law.com> wrote:
>
> Chris,
>
> Should we have your clients served?  I did not hear back from you as it if you wil accept service.
>
> Amy

Amy Welborn, Managing Partner
Welborn Law LLC
8127 Mesa, Suite B206
Austin, Texas 78759
512.825.3390
amy@welborn-law.com
**Error! Filename not specified.**



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Taylor Norman on behalf of Christopher Schulz
Bar No. 24060576
tnorman@slh-law.com
Envelope ID: 100069999
Filing Code Description: FINAL OR PARTIAL DISPOSITION ORDER
Filing Description: NOTICE OF REMOVAL
Status as of 4/28/2025 1:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 4/24/2025 5:55:55 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/24/2025 5:55:55 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/24/2025 5:55:55 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 4/24/2025 5:55:55 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 4/24/2025 5:55:55 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 4/24/2025 5:55:55 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 4/24/2025 5:55:55 PM | SENT |





**VELVA L. PRICE**
DISTRICT CLERK, TRAVIS
COUNTY
P.O. BOX 679003
AUSTIN, TX 78767

To:
**Christopher Houston Schulz**
**9011 MOUNTAIN RIDGE DR**
**STE 210**
**AUSTIN TX 78759**

4/28/2025

NOTICE OF ORDER
**D-1-GN-25-002112**

www.traviscountytx.gov/district-clerk/online-case-information

You are hereby notified that an order has been signed and entered on **04/24/2025** in the **345th District Court** of Travis County, Texas in the above case. **Order** is available at the office of the clerk of the court, located at 1700 Guadalupe Street, 3rd floor, room 3.200, Austin, Texas 78701. **THE ORDER MAY BE SUBJECT TO APPEAL.** If you are an individual (not a company), your money or property may be protected from being taken to pay this judgment. Find out more by visiting www.texaslawhelp.org/exempt-property.

VELVA L. PRICE, District Clerk

I, **VELVA L. PRICE, District Clerk,**
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on 4/30/25

**VELVA L. PRICE**
**DISTRICT CLERK**
By Deputy:



AVISO DE ORDEN

Se le notifica que se ha firmado e ingresado un orden en Condado Travis en Texas en la causa numerada y intitulada referencia. Una copia de dicha Orden está disponible en la oficina del secretario del tribunal, ubicado en1700 Guadalupe Street, 3er piso, sala 3.200, Austin, Texas 78701. **LA ORDEN PUEDE SER OBJETO DE APELACIÓN.** Si usted es una persona física (no una empresa), su dinero o propiedad pudieran estar protegidos de ser embargado como pago de este fallo. Obtenga más información visitando www.texaslawhelp.org/exempt-property.

VELVA L. PRICE, Del Distrito



**VELVA L. PRICE**
DISTRICT CLERK, TRAVIS
COUNTY
P.O. BOX 679003
AUSTIN, TX 78767

To:
**AMY CATHERINE WELBORN**
**8712 MESA SUITE B206**
**AUSTIN TX 78759**

4/28/2025

NOTICE OF ORDER
**D-1-GN-25-002212**
www.traviscountytx.gov/district-clerk/online-
case-information

You are hereby notified that an order has been
signed and entered on **04/24/2025** in the **345th**
**District Court** of Travis County, Texas in the
above case. **Order** is available at the office of the
clerk of the court, located at 1700 Guadalupe
Street, 3rd floor, room 3.200, Austin, Texas
78701. **THE ORDER MAY BE SUBJECT TO**
**APPEAL.** If you are an individual (not a
company), your money or property may be
protected from being taken to pay this judgment.
Find          out          more          by          visiting
www.texaslawhelp.org/exempt-property.

VELVA L. PRICE, District Clerk



**I, VELVA L. PRICE, District Clerk,**
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on ___04/30/25___

**VELVA L. PRICE**
**DISTRICT CLERK**
By Deputy: _____



AVISO DE ORDEN

Se le notifica que se ha firmado e ingresado un orden en Condado Travis en Texas en la causa numerada y intitulada referencia. Una copia de dicha Orden está disponible en la oficina del secretario del tribunal, ubicado en1700 Guadalupe Street, 3er piso, sala 3.200, Austin, Texas 78701. **LA ORDEN PUEDE SER OBJETO DE APELACIÓN.** Si usted es una persona física (no una empresa), su dinero o propiedad pudieran estar protegidos de ser embargado como pago de este fallo. Obtenga más información visitando www.texaslawhelp.org/exempt-property.

VELVA L. PRICE, Del Distrito