UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISON

| | |
|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS,<br>    *Plaintiffs,*<br><br>v.<br><br>AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY,<br>    *Defendants.* | §<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 1:25-cv-00615-ADA-SH<br>§<br>§<br>§<br>§<br>§<br>§ |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

COME NOW Defendants who file this, their Opposition to Plaintiffs' Motion to Remand, and in support thereof respectfully show the Court as follows:

**I.  THE FORUM SELECTION CLAUSE DOES NOT BAR REMOVAL, AND REMOVAL WAS PROPER**

Plaintiff argues that a contractual forum selection clause bars removal, but the clause merely specifies the location. Notably, the clause at issue provides:

> In the event of litigation, the venue of any action hereunder shall lie exclusively ***within*** the Circuit Court ***of*** Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury.

Dkt. 9-2, ¶ 12 (emphasis added). "When a forum selection clause uses the phrase 'of [named county],' waiver analysis often turns on whether a federal court sits in the specified county. *See* David S. Coale, Rebecca L. Visosky, Diana K. Cochrane, *Contractual Waiver of the Right to Remove to Federal Court: How Policy Judgments Guide Contract Interpretation*, 29 Rev. Litig. 327, 348 (2010). Faced with a similar situation, where a federal courthouse sits within the county named in the contract, the Fifth Circuit has held that the issue is whether venue is proper when the district court is located in the specified county. *All. Health Grp., LLC v. Bridging Health Options,*

1

*LLC*, 553 F.3d 397, 400 (5th Cir. 2008) ("Accordingly, the clause at hand, providing for venue in a specific county, permits venue in either federal or state court, because a federal courthouse is located in that county."). Therefore, removal is proper.

Removal is also proper because the term "within" in the clause denotes geographic location rather than jurisdiction. The Fifth Circuit has drawn a clear distinction between language referring to a specific court—such as "of" a particular court—and language indicating a general location, such as "in" or "within" a county. *See Lamar Cnty. Elec. Coop. Ass'n v. McInnis Bros. Constr., Inc.*, No. 4:20-CV-930, 2021 WL 1061188, at *9 (E.D. Tex. Mar. 19, 2021), *aff'd*, No. 21-40292, 2022 WL 476086 (5th Cir. Feb. 16, 2022) ("[T]he word 'in' within the context of forum-selection clauses normally signifies 'an intent to select the state and the federal courts' in a specific geographic area."). Accordingly, a clause designating actions to occur "within" a county does not exclude federal jurisdiction unless it does so clearly and unequivocally. In *Lamar County*, for example, the clause referenced the "Judicial District in and for the County of the project location," and the Fifth Circuit confirmed that "in" refers to geographic location, while "for" relates to jurisdiction. *See Lamar Cnty. Elec. Coop. Ass'n*, 2022 WL 476086, at *2.

The forum-selection clause here—stating that jurisdiction "shall lie exclusively *within* the Circuit Court *of* Travis County"—merely designates a geographic venue within Travis County. It does not unequivocally state that the jurisdiction is in the District Court for Travis County, nor does it expressly waive the right to federal jurisdiction in that same location. There is no dispute that this Court is located within Travis County, and because the clause does not explicitly exclude federal jurisdiction or prohibit removal, it does not bar removal to this Court, and removal is therefore proper.

Alternatively, to the extent the court finds that the clause is ambiguous, the court should conclude that an ambiguous clause does not contain a "clear and unequivocal" waiver of the right to remove to federal court. *See* Dkt. 9, ¶¶ 15-16; *Grand View PV Solar Two, LLC v. Helix Elec., Inc./Helix Elec. of Nevada, L.L.C., J.V.*, 847 F.3d 255, 258 (5th Cir. 2017) ("[A]mbiguous language cannot constitute a 'clear and unequivocal' waiver."). Under Texas law, contract language is considered ambiguous if it is "reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Further, as the court observed in *Mosing v. Zloop, Inc.*, No. CIV.A. H-15-136, 2015 WL 1841212, at *1 (S.D. Tex. Apr. 22, 2015), a forum-selection clause must contain an explicit waiver of removal rights to preclude access to federal court, which is lacking here. Because the clause here is ambiguous and lacks any "clear and unequivocal" language barring federal jurisdiction, removal remains proper. *Grand View,* 847 F.3d at 258. The reference to "the Circuit Court of Travis County" could also be subject to multiple interpretations, as no such court exists within the Texas judiciary—Texas trial courts are identified as "District Courts" or "County Courts," not "Circuit Courts."[1] However, the term "Circuit Court" is typically used in the federal judiciary, rendering the intended clause uncertain. To the extent the Court finds the clause ambiguous, it should hold that such ambiguity fails to constitute a "clear and unequivocal" waiver of the right to remove the case to federal court.

**II.   PLAINTIFFS CANNOT SEEK TO SELECTIVELY ENFORCE THE CONTRACT WHILE DISREGARDING ITS EXPRESS WAIVER OF JURY TRIAL**

Plaintiffs seek to benefit from selective enforcement of the contract's terms. The parties' agreement clearly and unambiguously states that "the parties... expressly waive all right to trial by jury." Dkt. 9-2, ¶ 12. However, despite this explicit waiver, Plaintiffs filed their petition in State

---

[1] Texas Courts, *Court Structure of Texas*, Sept. 1, 2015, https://www.txcourts.gov/media/1097010/Court-Structure-Chart-Sept-2015.pdf.

court with a demand for a jury trial, accompanied by the tender of a jury fee. Dkt. 9-1, p. 27, ¶ 150. This contradictory position undermines their argument, as Plaintiffs cannot cherry-pick the provisions of the contract that serve their interests while ignoring others, especially those related to procedural rights like the waiver of a jury trial and removal.

### III. PLAINTIFFS' MEDIATION ALLEGATIONS ARE LEGALLY IRRELEVANT TO REMOVAL

Plaintiffs' argument that removal was done "instead of agreeing to the mediation" is legally irrelevant. Congress afforded defendants a right to remove as a general matter when the statutory criteria are satisfied by the presence of federal jurisdiction. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S.Ct. 704, 708, 163 L.Ed.2d 547 (2005) (emphasizing that the decision to remove a case to federal court is based on the statutory right to do so). Nonetheless, Defendants are amenable to participation in the Court's mediation program.

### IV. PLAINTIFFS' RECASTING OF THEIR FEDERAL CLAIMS AS "INSUBSTANTIAL" IS WITHOUT MERIT

Plaintiffs cannot defeat removal by minimizing the significance of the very federal claims they chose to assert. The well-pleaded complaint rule forecloses such tactics: a plaintiff may not avoid federal jurisdiction by recasting or downplaying federal causes of action. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) ("[A] plaintiff may not defeat removal by omitting to plead necessary federal questions."). Here, Plaintiffs have expressly invoked the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act—federal statutes that independently establish federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs now attempt to walk back those claims by contending that their ADA and Section 504 allegations are "so insubstantial" and merely derivative of state law issues related to accreditation and the unauthorized practice of medicine. Dkt. 9, ¶ 35. This reframing is both legally incorrect and factually unsupported.

The heart of Plaintiffs' complaint is not a dispute over educational licensure or state regulatory violations, but the claim that H.P. was discriminated against and retaliated against based on disability—and that his family members were similarly targeted due to their association with H.P. *See* Dkt. 9, ¶ 4. Plaintiffs also allege state law violations – breach of contract – based, in part, on an alleged violation of Section 504. Under 28 U.S.C. § 1367(c)(2), a court may decline to exercise supplemental jurisdiction where the state law claims "substantially predominate" over the federal claims "in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought." However, such circumstances are not present here. Plaintiffs' own allegations make clear that the central thrust of their lawsuit is disability-based discrimination and retaliation governed by federal law, not a complex web of independent state law claims.

Plaintiffs assert causes of action under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, both of which are well-established federal statutes designed to ensure equal access and protection for individuals with disabilities. These claims are not peripheral; they are the heart of the case. For example, Plaintiffs allege that AMS failed to provide "reasonable accommodations to H.P.," and as a result, H.P. was expelled. Dkt. 9-1, ¶ 14. They further allege that this expulsion was retaliatory, following a complaint filed with the Department of Health and Human Services based on expulsion policies. *Id*., ¶ 63. The Complaint repeatedly refers to acts of discrimination and retaliation. By further example, Plaintiffs explicitly claim that they attempted to address "the discrimination and retaliation," but instead faced further adverse discriminatory actions. *Id*., ¶ 64. Moreover, Plaintiffs further assert that H.P. was discriminated against when he was routinely sent home early from school, which allegedly caused Plaintiffs monetary damages in the form of lost income. *Id.*¶ 13, 21. They further allege that AMS was provided with a special education evaluation conducted by AISD (¶ 65), and that in response—not

5

due to a breach of contract, unauthorized practice of medicine, or licensing dispute—the other Ponder children were also expelled, allegedly as disability-based associational retaliation. *Id.*, ¶ 67. Significantly, Plaintiffs assert that H.P. "was denied full and equal educational access [and] denied disability accommodations" in purported violation of federal law. *Id.*, ¶ 67. They go on to claim that AMS's failure to implement a 504 Plan caused H.P. developmental delays. *Id.*, ¶ 68. These are not claims anchored in state contract or tort law; they are grounded in federal disability rights law. Plaintiffs even go so far as to attribute the "root" of H.P.'s difficulties to AMS's "intentional and negligent failure to address his disability needs." *Id.* ¶ 69. These allegations demonstrate that the ADA and Section 504 claims are not incidental—they are the legal and factual core of the Complaint.

Although Plaintiffs attempt to resist removal by framing this case as involving "a complex matter involving Texas laws regarding the unauthorized practice of medicine and the regulations regarding the accreditation of schools," that characterization of complexity is not supported by either controlling law or the substance of their pleadings. Civil claims for the unauthorized practice of medicine are not complex and have been addressed by federal courts in this District. *See, e.g., Aguirre v. Tristar Risk Mgmt.*, No. C-10-394, 2011 WL 248199, at *6 (S.D. Tex. Jan. 24, 2011) (dismissing claims for unauthorized practice of medicine brought under Section 165.153). In addition, Plaintiffs' operative complaint contains no allegations implicating any regulatory framework governing school "accreditation," nor does Texas law require private schools to obtain accreditation from the state. *See* Dkt. 9-1. To the extent Plaintiffs are referring to their negligence *per se* claims, as discussed above, tort claims are not novel or complex, and Plaintiffs' state law claims are secondary in both scope and substance and may serve as background or support to the

discrimination claims; are based on the same set of facts, and do not predominate the legal issues to be resolved.

Accordingly, the state law issues do not "substantially predominate" under § 1367(c)(2). To the contrary, the federal claims are central and substantial, and they properly invoke this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1441, and federal courts routinely exercise jurisdiction over claims brought under the ADA and Section 504, even when such claims are intertwined with or arise alongside state law disputes. Remand is therefore unwarranted.

V.   **THE COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS**

As the Supreme Court noted, 28 U.S.C. § 1367 provides litigants an "opportunity … to pursue complete relief in a federal-court lawsuit." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235, 1240, 163 L.Ed.2d 1097 (2006). This Court should retain supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related … that they form part of the same case or controversy." *Id*. "Whenever a federal court has supplemental jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b)[6] or (c) applies." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). None of the discretionary bases for declining supplemental jurisdiction under 28 U.S.C. § 1367(c) apply.

The Court's supplemental jurisdiction should be exercised here. First, Plaintiffs' state law claims do not "raise novel or complex issues of State law" under § 1367(c)(1) as Plaintiff would have the Court believe. Instead, Plaintiffs assert tort and contract claims that are neither legally novel nor factually complex and are based on the same underlying conduct as their federal claims. *Parker*, 468 F.3d at 743–44 (citing *Myers v. Richland County,* 288 F.Supp.2d 1013, 1018 (D.N.D.

7

2003) (holding breach of contract, defamation, and intentional infliction of emotional distress claims do not raise novel or complex issues of state law)).

Second, as explained above, Plaintiffs' state law claims do not "substantially predominate" over their federal claims for purposes of § 1367(c)(2). Plaintiffs themselves identify disability discrimination and retaliation as the central issues in the case. Both their federal and state claims arise from the same alleged conduct: the treatment of H.P. by Defendants, the school's response to his disability-related needs, and alleged retaliatory actions toward H.P. and his family, and these claims are factually intertwined and stem from a shared course of events. Plaintiffs concede this overlap, stating: "In the case at hand, the 504 and ADA claims...are a part of the facts that has lead[*sic*] to the allegations of unauthorized practice of medicine." Dkt. 9, ¶ 35. Because the state and federal claims arise from the same operative facts, they fall within the same Article III "case or controversy," and courts routinely exercise supplemental jurisdiction in such circumstances to promote judicial economy, avoid piecemeal litigation, and ensure consistent adjudication of overlapping factual and legal issues. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("[I]f state and federal claims derive from a common nucleus of operative fact, the federal court has power to hear the whole.").

Third, there has been no dismissal of the federal claims under § 1367(c)(3), and the Court has original jurisdiction under 28 U.S.C. § 1331. But even if the federal claims are later dismissed, the Court could still exercise its jurisdiction over the related state claims. *See, e.g.*, *Arbaugh*, 126 S. Ct. at 1244–45; *New Mex. v. Gen. Elec. Co.*, 467 F.3d 1223 (10th Cir. 2006); *Urban Dev., LLC v. City of Jackson*, *Miss.,* 468 F.3d 281, n.16 (5th Cir. 2006).

Finally, no "exceptional circumstances" exist under § 1367(c)(4) that warrant declining jurisdiction. Exercising supplemental jurisdiction is consistent with the statutory framework,

judicial efficiency, and the interests of justice. The Court should therefore retain jurisdiction over all of the Plaintiffs' claims—federal and state—and deny remand.

### VI. PLAINTIFFS ARE NOT ENTITLED TO FEES OR COSTS BECAUSE REMOVAL IS PROPER AND OBJECTIVELY REASONABLE

Plaintiffs seek an award of costs and actual expenses, including attorney's fees, incurred as a result of what they claim is an improper removal, pursuant to 28 U.S.C. § 1447(c). Dkt. 9 at 10. However, the removal was objectively reasonable, and there is no basis for an award of fees under 28 U.S.C. § 1447(c). *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140, 126 S.Ct. 704, 710, 163 L.Ed.2d 547 (2005) (finding "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."). Defendants had a good-faith basis for removal based on federal jurisdiction and the forum selection language. Plaintiff's motion to remand and for attorney's fees and costs must be denied.

### VII. CONCLUSION

Plaintiffs' Motion to Remand should be denied. The forum-selection clause does not unambiguously waive Defendants' right to removal, and its phrase, "within" Travis County, makes removal to this Court proper. Plaintiffs' ADA and Section 504 claims are central—not incidental—and establish federal question jurisdiction under 28 U.S.C. § 1331. The state law claims arise from the same nucleus of facts, are neither novel nor complex, and fall squarely within this Court's supplemental jurisdiction under § 1367. Accordingly, this case is properly before this Court, and remand must be denied.

        Respectfully submitted,

        **SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**

        Travis Building
        9011 Mountain Ridge Dr., Suite 210
        Austin, Texas 78759
        Telephone: 512-840-0022
        Facsimile: 210-538-5384

        By: */s/ Elizabeth Angelone*
        CHRISTOPHER SCHULZ
        State Bar No. 24060576
        Email: cshulz@slh-law.com
        ELIZABETH ANGELONE
        State Bar No. 24077349
        Email: eanglone@slh-law.com
        ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on May 8, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Plaintiffs' counsel of record. In addition, a copy was served directly via email to:

Amy C. Welborn
WELBORN LAW LLC
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

        */s/ Elizabeth Angelone*
        Attorney for Defendants